No. 26-5243

IN THE
# United States Court of Appeals for the District of Columbia Circuit

LEAGUE OF WOMEN VOTERS, *et al.*,

*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Columbia
Case No. 1:25-cv-03501
(The Honorable Sparkle L. Sooknanan)

## BRIEF OF AMICI CURIAE IOWA, FLORIDA, INDIANA, AND OHIO IN SUPPORT OF APPELLANT AND STAY PENDING APPEAL

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-8770
eric.wessan@ag.iowa.gov

July 9, 2025

*Counsel for Amici States*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................iii

INTEREST OF AMICI CURIAE STATES ............................................... 1

INTEREST OF AMICI CURIAE STATES ............................................... 3

ARGUMENT .......................................................................................... 4

    I.     ABSENT A STAY, THE VACATUR ORDER
          WILL CONTINUE TO INFLICT IMMEDIATE
          AND IRREPARABLE HARM ON THE STATES
          AND THEIR CITIZENS. ....................................................... 5

          A.     The Order Nullifies Duly Enacted State
                  Laws.................................................................................. 5

          B.     The Order Is Inflicting Concrete Injuries—
                  Now—That No Later Judgment Can
                  Remedy. ........................................................................... 7

          C.     The Order Abrogates a Court-Approved
                  Settlement and Subjects the Government to
                  Conflicting Judicial Commands. .................................. 10

    II.    THE BALANCE OF EQUITIES AND THE
          PUBLIC INTEREST STRONGLY FAVOR A
          STAY................................................................................... 13

CONCLUSION .................................................................................... 14

CERTIFICATE OF COMPLIANCE ..................................................... 15

CERTIFICATE OF SERVICE.............................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abbott v. Perez*,
  585 U.S. 579 (2018) .................................................................5

*Am. Disability Ass'n, Inc. v. Chmielarz*,
  289 F.3d 1315 (11th Cir. 2002) .........................................10

*Connecticut v. Massachusetts*,
  282 U.S. 660 (1931) .............................................................7

*Feinerman v. Bernardi*,
  558 F.Supp.2d 36 (D.D.C. 2008) .................................8, 10

*League of Women Voters v. DHS*, No. 25-cv-3501,
  2025 WL 3198970 (D.D.C. Nov. 17, 2025) .......................13

*Martin v. Wilks*,
  490 U.S. 755 (1989) ...........................................................11

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................4, 12

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) .................................................................9

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) ...............................................8

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) .............................................................5

*United States v. Klein*,
  80 U.S. (13 Wall.) 128 (1871) ...........................................11

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977) ........................................4, 13

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) .............................................7

Statutes

5 U.S.C. § 552a .......................................................................13
8 U.S.C. § 1373 ...................................................................6, 13
42 U.S.C. § 15483...................................................................6
52 U.S.C. § 21083...................................................................6

**Page(s)**

Rules

Federal Rule of Appellate Procedure 29(a)(4)(E) ...................................... 1

# INTEREST OF AMICI CURIAE STATES[1]

States have a compelling interest in ensuring voters are only those entitled to participate in their elections. And States have a vital reliance interest in cooperative federalism to ensure that their doctors and nurses, among others, are lawfully present in the country. The district court's order below not only irreparably harms the States but also creates a crisis. It is impossible for the Department of Homeland Security to comply with its binding settlement agreement and the much-later filed order here.

Amici curiae are the States of Iowa, Florida, Indiana, and Ohio. Amici are the plaintiffs in *Florida v. Department of Homeland Security*, No. 3:24-cv-509 (N.D. Fla.), an action they resolved through settlement agreement that the district court there approved, incorporated by reference into its dismissal order, and retained jurisdiction for twenty years to enforce. *Florida v. DHS*, No. 3:24-cv-509 (N.D. Fla. Dec. 1, 2025), Dkt. 31.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici state that no party's counsel authored this brief in whole or in part, and that no person other than amici contributed money intended to fund the preparation or submission of this brief. No party objects to this brief.

In that settlement, the Department of Homeland Security ("DHS") guaranteed that the Systematic Alien Verification for Entitlements ("SAVE") system would remain free for state agencies, would permit verification searches keyed to full or last-four Social Security numbers ("SSNs"), and would process bulk-upload verification requests. *Florida*, Dkt. 30-1 ¶ 10.

Amici relied on those guarantees. They released and dismissed their claims with prejudice. And they enacted and amended state laws that depend on the SAVE capabilities the district court's vacatur order here eliminated.

When the federal government disabled those capabilities on June 23, 2026—one day after the order issued—amici's duly enacted laws became impossible to administer. Amici submit this brief to detail the immediate, ongoing, and irreparable harms that the vacatur order is inflicting on the States and their citizens—harms the district court refused to weigh because it deemed those immediate irreparable injuries to sovereign States as injuries to mere "third parties." Dkt. 123, Stay Op. 13 & n.7.

## INTEREST OF AMICI CURIAE STATES

On June 22, 2026, the district court vacated the 2025 improvements to the SAVE system nationwide. The next day, DHS disabled the system's SSN-search and bulk-upload functions for every State—including amici States, who were strangers to the proceedings below yet hold judicially enforceable rights to those very functions.

The consequences were immediate, and they compound daily. For example, in Iowa, a statute that took effect on July 1, 2026 requires state licensing boards to verify the citizenship or immigration status of every professional-license applicant through SAVE. *Florida*, Dkt. 34-1, ¶¶ 7-8. Because the only way to verify a natural-born citizen through SAVE is an SSN search, more than 350 licenses could not issue in the first days alone—leaving nurses, physicians, and teachers in limbo and costing Iowans contingent job offers. *See id.* ¶ 10.

In Florida, Ohio, and Indiana, statutes requiring citizenship verification in voter-roll maintenance can no longer be administered as designed—in the middle of a live election cycle, with Florida's vote-by-mail ballots already in the mail and its statewide primary set for August 18, 2026. *Id.*, Dkt. 32-1 ¶ 6. And on July 7, 2026, the Northern District of

Florida ordered the government to immediately restore the disabled functions, placing the Executive under two irreconcilable court orders. *Florida*, Dkt. 45. Each harm is irreparable.

The government's motion establishes the remaining stay factors. Mot. 10-27. At a minimum, the Court should stay the vacatur order insofar as it abrogates the States' settlement-guaranteed access to SAVE.

## ARGUMENT

A stay pending appeal turns on the movant's likelihood of success, irreparable injury absent a stay, injury to other interested parties, and the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). A stay is also warranted where a motion presents a "serious legal question" and the balance of equities tips sharply in its favor. *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843-44 (D.C. Cir. 1977).

The government's motion shows its likelihood of success. Amici write to supply what the decision below refused to consider: the equitable factors as they bear on the sovereign States whose laws, elections, and bargained-for rights the vacatur order has upended.

## I. ABSENT A STAY, THE VACATUR ORDER WILL CONTINUE TO INFLICT IMMEDIATE AND IRREPARABLE HARM ON THE STATES AND THEIR CITIZENS.

### A. The Order Nullifies Duly Enacted State Laws.

"Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 835 (2025) (cleaned up); *see Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). The vacatur order does not enjoin amici States by name, but its practical effect is the same. The order renders duly enacted state statutes impossible to execute.

Start with Iowa. On June 2, 2026, Governor Reynolds signed Senate File 2218, which codified a SAVE Clearinghouse within the Iowa Department of Inspections, Appeals, and Licensing ("DIAL") and mandated that Iowa's professional licensing boards use SAVE to verify citizenship or immigration status of every applicant for a professional license. 2026 Iowa Acts, S.F. 2218; *Florida*, Dkt. 34-1 ¶¶ 5-7.

The same law extends SAVE verification to the hiring of educators, law-enforcement officers, and state-agency and Regents-institution personnel. *Id.* (amending Iowa Code §§ 256.146, 91F.1, 2.11, 7E.3, 262.9E). Senate File 2218 took effect on July 1, 2026. *Id.* ¶ 8. It is now

unworkable. "[T]he only way for DIAL to verify a natural born U.S. citizen through the . . . SAVE verification system is through submission of the citizen's SSN," *id.* ¶ 9, the June 23 shutdown of SSN search makes complying with Iowa law impossible for the largest class of applicants—natural-born U.S. citizens.

Florida, Ohio, and Indiana fare no better. Florida law imposes a continuing duty to identify and remove noncitizens from the voter rolls, Fla. Stat. § 98.075(1), (4)-(7), and declares state access to citizenship information "necessary" to that task, *id.* § 98.093(1); *see also* 42 U.S.C. § 15483(a)(4) (requiring states to "remove registrants who are ineligible to vote").

Ohio and Indiana law likewise mandate citizenship verification in voter-list maintenance. Ohio Rev. Code §§ 3503.152, 3503.18; Ind. Code §§ 3-7-26.3-10, 3-7-26.3-16, 3-7-38.2-7.3. Federal law demands the same accuracy of the States, *see* 52 U.S.C. § 21083(a)(2)(A), and obligates DHS to "respond to an inquiry by a . . . State . . . seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law." 8 U.S.C. § 1373(c).

The vacatur order thus saddles the States with statutory duties they cannot discharge and the federal government with a statutory obligation it cannot fulfill. (Putting aside the reliance interests from the settlement agreement entered to effectuate both State and federal law.) Under *King* and *Abbott*, that is irreparable injury—and it continues every day the order remains in effect.

**B.     The Order Is Inflicting Concrete Injuries—Now—That No Later Judgment Can Remedy.**

As bad, the district court's order creates an impossibility that requires the federal government to violate a court order. But there is no basis for the order that the government must violate to be the one that inflicts immediate irreparable harm on States.

Those harms are not speculative. The record documents injuries that are "certain and great," "actual," and imminent. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)). Reviewing sworn and unrebutted declarations from Iowa, Florida, and Ohio officials, the Northern District of Florida found that the States "are suffering real and concrete harm every day that passes without the disabled features of the SAVE system." *Florida*, Dkt. 45 at 6.

*Professional licensing.* Within days of DHS disabling SSN search, more than 350 professional licenses in Iowa were stalled—licenses that "cannot be verified, and therefore cannot be issued." *Florida*, Dkt. 34-1 ¶ 10. Applicants report that employment offers contingent on licensure "are either in jeopardy, or have been rescinded." *Id.* ¶ 12. Those are not abstractions. They are nurses, physicians, pharmacists, dentists, teachers, architects, and plumbers whose livelihoods are on hold, *id.* ¶¶ 4, 13, and Iowans who will go without "life-saving services" while licensure sits in limbo, *id.* ¶ 13.

A rescinded job offer cannot be un-rescinded by an appellate mandate months from now. And because sovereign immunity forecloses any damages remedy against the United States, neither the States nor their citizens can ever be made whole. *See Feinerman v. Bernardi*, 558 F.Supp.2d 36, 51 (D.D.C. 2008) (economic loss that is unrecoverable is irreparable); *see also Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016).

*Election administration.* The vacatur landed mid-stride in a live election cycle. Florida's vote-by-mail ballots were required to begin going out no later than July 4, 2026; early voting begins August 3; the statewide

primary is August 18. *Florida*, Dkt. 32-1 ¶ 6; Fla. Stat. §§ 101.62(3), 101.657(1)(d).

Voter-list maintenance is a "daily responsibility" for a State with nearly 14 million registered voters, and without bulk upload and SSN search Florida "cannot identify potential noncitizens as accurately, efficiently, and timely" as its law requires. *Florida*, Dkt. 32-1 ¶¶ 4-6.

Ohio's election officials attest to the same disruption. *Florida*, Dkt. 32-2. Once ballots are cast and counted, no court can unscramble that egg. An election conducted on rolls the States were disabled from verifying is a completed, irreversible event. *Cf. Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam). And it was the vacatur order—not a stay—that changed the rules on the eve of voting, stripping the States of verification tools they had used for more than six months across more than "one million status-verification requests" each day. Mot. 26.

*Wasted sovereign investment.* Iowa spent months negotiating access with DHS, invested "hundreds of hours" in policy creation and training, and submitted more than 8,150 verification cases between December 2025 and June 2026. *Florida*, Dkt. 34-1 ¶ 6. Florida built the settlement's capabilities into the daily list-maintenance routine required by its

Election Code. *Id.*, Dkt. 32-1 ¶¶ 4-5. Those reliance investments—and the costly one-by-one manual workarounds now required—are unrecoverable, which is precisely what makes them irreparable. *Feinerman*, 558 F. Supp. 2d at 51.

## C. The Order Abrogates a Court-Approved Settlement and Subjects the Government to Conflicting Judicial Commands.

The disabled capabilities are not administrative grace. The States sued and received access as consideration the United States paid to resolve litigation with four States. The Northern District of Florida approved that settlement, incorporated it into its dismissal order, and retained jurisdiction for twenty years to enforce it—making it the "functional equivalent of . . . a consent decree." *Florida*, Dkt. 45 at 5–6 (quoting *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002).

The States performed. The States released and dismissed their claims with prejudice. The vacatur order now permits the United States' side of that bargain to be undone in a suit between other parties, in another forum, to which no amicus State was joined. But "[a] judgment or decree among parties to a lawsuit resolves issues as among them," and

"it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 755, 762 (1989). The district court invoked that very principle on behalf of the plaintiffs below, Dkt. 123 at 17, yet its universal vacatur abrogated the rights of amici States—the actual strangers to its proceedings—without notice or an opportunity to be heard.

The harm radiates well beyond this case. "It is as much the duty of the government as of individuals to fulfil its obligations." *United States v. Klein*, 80 U.S. (13 Wall.) 128, 144 (1871). If a judicially approved settlement with the United States can be stripped of its central terms whenever a later-filed suit elsewhere yields a conflicting judgment, no State can safely release claims relying on the federal government's word again. That injury—to cooperative federalism and to every future settlement with the United States—cannot be undone after the fact.

The government now stands under two irreconcilable orders: the Northern District of Florida's July 7 command to "immediately comply with the court-approved settlement agreement . . . by reinstating Plaintiffs' access to the bulk-upload and SSN-search features," *Florida*, Dkt.45 at 9, and the vacatur order forbidding exactly that.

The district court waved this bind away as "self-inflicted." Dkt. 123 at 15. That characterization is news to the four states that litigated and negotiated to ensure access to the database that they were aware others could try to degrade. The self-inflicted label does not fit. The government's settlement obligations attached on December 1, 2025— more than six months before vacatur—and complying a binding order of a coordinate federal court is not self-sabotage. Only a stay from this Court restores a coherent status quo. Without one, the Executive must choose which Article III command to defy.

Finally, the district court refused to weigh any of these harms because "injuries to third parties are not a basis to find irreparable harm." Dkt. 123 at 13 n.7 (citation omitted).

Whatever the force of that rule as applied to a movant's own showing, it is no answer here. The States' injuries bear directly on the third and fourth *Nken* factors—the harm to "other parties interested in the proceeding" and "the public interest," 556 U.S. at 434—and amici now present those injuries in their own right. An equitable analysis that treats sovereign States' inability to enforce their own laws as a non-cognizable problem is not a weighing of the equities at all.

## II. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST STRONGLY FAVOR A STAY.

The government's motion shows a likelihood of success on the merits. Mot. 10–25. Amici add one point: another federal court has independently examined the same question and concluded—explicitly—that "the modifications to the SAVE system, including the bulk-upload and SSN-search features, do not violate the Social Security Act or the Privacy Act." *Florida*, Dkt. 45 at 6 n.5; *see id.* at 7–8 (relying on 8 U.S.C. §§ 1373(a), 1644, and the Privacy Act's routine-use exception, 5 U.S.C. § 552a(b)(3)). At the very least, a square conflict between two federal courts over the legality of the same federal program presents a "serious legal question," and where the balance of harms tips this decisively toward a stay, that suffices. *Holiday Tours*, 559 F.2d at 844.

On the other side of the ledger, a stay works little cognizable harm. The district court itself denied plaintiffs preliminary relief in November 2025 for failure to show irreparable harm, *League of Women Voters v. DHS*, No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025), and the modified system operated for more than six months.

A stay merely restores that longstanding status quo pending expedited review. Against it stand the States' sovereign interests in

13

enforcing their duly enacted laws, in ensuring "that non-citizens are not on their voter rolls, that unlawfully present aliens are not receiving professional licenses," *Florida*, Dkt. 45 at 9, and in holding the federal government to its bargained-for word. Those interests decisively outweigh the asserted interests on the other side.

## CONCLUSION

For these reasons, amici States respectfully ask this Court to grant the emergency stay pending appeal. Amici support the government's request for as prompt a ruling as possible.

July 9, 2026                              Respectfully submitted,


                                          BRENNA BIRD
                                          Attorney General of Iowa

                                          */s/ Eric H. Wessan*
                                          ERIC H. WESSAN
                                          *Solicitor General*

                                          Hoover State Office Building
                                          1305 East Walnut Street
                                          Des Moines, Iowa 50319
                                          (515) 823-9117 / (515) 281-5191
                                          (515) 281-4209 (fax)
                                          eric.wessan@ag.iowa.gov

                                          *Counsel for Amici States*



## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Local R. 29(b), I certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(4) because it contains 2,600 words, excluding those parts exempted by Fed. R. App. P. 32.

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief

has been prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft Office 365.

3. This brief complies with the electronic filing requirements because the text of the electronic brief is identical to the text of the paper copy and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

July 9, 2026                         /s/ Eric H. Wessan
                                     ERIC H. WESSAN
                                     *Solicitor General*

                                     *Counsel for Amici States*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on July 9, 2026. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

July 9, 2026                         /s/ Eric H. Wessan
                                     ERIC H. WESSAN
                                     *Solicitor General*

                                     *Counsel for Amici States*

## ADDITIONAL ATTORNEYS GENERAL IN SUPPORT

James Uthmeier
Attorney General of Florida

Theodore E. Rokita
Attorney General of Indiana

Andy Wilson
Attorney General of Ohio