**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 26-5243**

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

LEAGUE OF WOMEN VOTERS; *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY; *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-CV-03501-SLS (Hon. Sparkle L. Sooknanan)

**BRIEF OF ARIZONA SENATE PRESIDENT WARREN PETERSEN AND SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES STEVE MONTENEGRO AS AMICI CURIAE IN SUPPORT OF DEFENDANTS-APPELLANTS' MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY AND STAY PENDING APPEAL**

Vincent M. Wagner
Kate B. Sawyer
FUSION LAW, PLLC
7600 N. 15th Street,
  Suite 150
Phoenix, Arizona 85020
(480) 624-5648
vmw@fusion.law
kbs@fusion.law

*Counsel for Amici Curiae*

# D.C. CIRCUIT RULE 28(a) CERTIFICATE

**A.** **Parties and Amici.**—Except for amici joining this brief and any other amici who had not yet entered an appearance in this case as of the preparation of this brief, all parties, intervenors, and amici before the district court and this court are listed in Defendants-Appellants' Certificate as to Parties, Rulings, and Related Cases.

**B.** **Rulings Under Review.**—References to the rulings on review appear in the Addendum to Defendants-Appellants' Emergency Motion for an Immediate Administrative Stay and Stay Pending Appeal, and those rulings are reproduced at Add. 1–77, 91–114.

**C.** **Related Cases.**—This case has not previously been before this Court, and counsel is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

## D.C. CIRCUIT RULE 29(d) STATEMENT

Pursuant to D.C. Circuit Rule 29(d), Amici Curiae state that this separate brief is necessary to provide Amici's unique perspective on the significance of this appeal for state legislators like themselves. And given the currently expedited nature of this appeal, Amici submitting this brief are unable to file a single brief with other unidentified potential amici.

All parties are unopposed to the filing of this brief.

# TABLE OF CONTENTS

D.C. CIRCUIT RULE 28(a) CERTIFICATE ..............................................i

D.C. CIRCUIT RULE 29(d) STATEMENT ...............................................ii

TABLE OF AUTHORITIES....................................................................iv

INTEREST OF AMICI CURIAE ...........................................................1

ARGUMENT........................................................................................3

    I.  States have an important interest in maintaining public confidence in elections. ...............................................................3

    II.  A stay would provide the consistency necessary to maintain public confidence—especially because elections already are already underway. ........................................................................7

CONCLUSION ....................................................................................12

CERTIFICATE OF COMPLIANCE ......................................................13

CERTIFICATE OF SERVICE...............................................................14

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Milligan,*
146 S. Ct. 1377 (2026) ...................................................................................... 7

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997) ............................................................................................. 6

*Bond v. United States,*
564 U.S. 211 (2011) ........................................................................................... 6

*Burson v. Freeman,*
504 U.S. 191 (1992) ........................................................................................... 4

*Carson v. Simon,*
978 F.3d 1051 (8th Cir. 2020) ......................................................................... 9

*Crawford v. Marion County Election Board,*
553 U.S. 181 (2008) ..................................................................................... 4, 6

*Democratic National Committee v. Republican National Committee,*
141 S. Ct. 28 (2020) ........................................................................................ 11

*Florida v. U.S. Dep't of Homeland Sec.,*
No. 3:24-CV-509, 2026 WL 1968339 (N.D. Fla. July 7, 2026) .............. 8

*Gregory v. Ashcroft,*
501 U.S. 452 (1991) ........................................................................................... 6

*League of United Latin American Citizens v. Executive Office of the President,*
780 F. Supp. 3d 135 (D.D.C. 2025) .............................................................. 10

*Maine v. Taylor,*
477 U.S. 131 (1986) ........................................................................................... 6

*Mi Familia Vota v. Fontes,*
129 F.4th 691 (9th Cir. 2025) ......................................................................... 2

*Purcell v. Gonzalez,*
549 U.S. 1 (2006) ........................................................................................ 4, 10

*Storer v. Brown,*
415 U.S. 724 (1974) ........................................................................................... 4

*Tennessee Conference of the National Association for the
   Advancement of Colored People v. Lee*,
   105 F.4th 888 (6th Cir. 2024) ..............................................................11

**Constitutional Provisions**
Ariz. Const. art. IV, pt. 2, § 8 ...................................................................1

**Statutes & Rules**
Ariz. Rev. Stat. § 1-504...............................................................................2

Ariz. Rev. Stat. § 16-121.01........................................................................2

Ariz. House of Reps. Rule 4(K)..................................................................1

Ariz. State Senate Rule 2(N)......................................................................1

**Other Authorities**
*2026 State Primary Elections*, Vote 411,
   https://www.vote411.org/primaries2026 (last visited Jul. 9, 2026) ....10

Cameron Smith, *New Mississippi laws bring teacher raises and voter
   verification changes*, WJTV (July 1, 2026, at 8:02 CDT),
   https://www.wjtv.com/news/politics/mississippi-politics/new-
   mississippi-laws-bring-teacher-raises-and-voter-verification-changes/
   .............................................................................................................9

Joseph K. Giddens, *Yavapai County Board of Supervisors vote 4-1 to
   verify voter data with DHS*, Sedona Red Rock News (Mar. 13, 2026),
   https://www.redrocknews.com/2026/03/13/yavapai-county-board-of-
   supervisors-vote-4-1-to-verify-voter-data-with-dhs/.............................2

Jude Joffe-Block & Miles Parks, *33 million voters have been run
   through a Trump administration citizenship check*, npr (Sept. 11,
   2025, at 1:37 ET), https://www.npr.org/2025/09/10/nx-s1-
   5477367/save-election-citizenship-data-trump......................................9

Katie King, et al., *Election Legislation Trends to Watch in the Coming
   Months*, NCSL (Mar. 30, 2026), https://www.ncsl.org/state-
   legislatures-news/details/election-legislation-trends-to-watch-in-the-
   coming-months .....................................................................................8

Manuelita Beck, *Maricopa County signed agreement with DHS to check
   voters' citizenship, documents show*, ABC 15 (May 13, 2026, at 8:22

MST), https://www.abc15.com/news/politics/maricopa-county-signed-agreement-with-dhs-to-check-voters-citizenship-documents-show ......3

NCSL Staff, *Can States and the Feds Strike a Balance on Election Roles?*, NCSL (Nov. 11, 2025), https://www.ncsl.org/state-legislatures-news/details/can-states-and-the-feds-strike-a-balance-on-election-roles ...................................................................................................4

Pew Rsch. Ctr., *Confidence in voting access and integrity; expectations for whether and when the election results will be clear* (Oct. 24, 2024), https://www.pewresearch.org/politics/2024/10/24/confidence-in-voting-access-and-integrity-expectations-for-whether-and-when-the-election-results-will-be-clear/ ...........................................................................5

Travis N. Taylor, *September 2024 Election Integrity Poll Summary*, Ctr. for Excellence in Polling (Sep. 13, 2024), https://excellenceinpolling.com/poll/september-2024-election-integrity-poll-summary/ ........................................................................5

Wesley Muller, *Louisiana adopts stricter voter ID rules that suffrage advocates call unneeded*, Louisiana Illuminator (June 10, 2026, at 5:00 MST), https://lailluminator.com/2026/06/10/louisiana-voter-id/ ...................................................................................................10

# INTEREST OF AMICI CURIAE[*]

Amici Curiae are Warren Petersen, President of the Arizona Senate, and Steve Montenegro, Speaker of the Arizona House of Representatives (together, the "Legislative Leaders"). They submit this brief in support of Defendants-Appellants' Emergency Motion for an Immediate Administrative Stay and Stay Pending Appeal. The Legislative Leaders file this brief in their official capacities as the presiding officers of their respective chambers. *See* Ariz. Const. art. IV, pt. 2, § 8; Ariz. State Senate Rule 2(N); Ariz. House of Reps. Rule 4(K).

The Legislative Leaders have two interests here. First, they have an interest in maintaining public confidence in Arizona elections. That interest includes ensuring that federalism functions properly and that federal courts fully understand state election laws. As their voters' representatives, state legislators like the Legislative Leaders devote significant time and resources to proposing, revising, and enacting election-related legislation to guide state officials trying to run fair and

---

[*] No party's counsel authored this brief in whole or in part; and no person other than Amici Curiae and their counsel contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E). All parties are unopposed to the filing of this brief.

1

smooth elections. Upending state election laws and related processes can shake voters' confidence and thus frustrate States' interests in maintaining public trust.

Second, the Legislative Leaders also have an acute interest in avoiding changes to election processes during election season. Like many States, Arizona has incorporated the federal Systematic Alien Verification for Entitlements (SAVE) system into various aspects of its election laws, as well as into other areas of law. *See, e.g.*, Ariz. Rev. Stat. § 16-121.01(D) (requiring election officials to use SAVE for certain voter registration procedures), *distinct but related provisions held invalid by Mi Familia Vota v. Fontes*, 129 F.4th 691, 732 (9th Cir. 2025), *cert. granted sub nom. Republican Nat'l Comm. v. Mi Familia Vota*, No. 25-1017 (U.S. June 29, 2026); *see also* Ariz. Rev. Stat. § 1-504 (statute requiring local officials to use SAVE for benefit inquiries). And some Arizona election officials have contracted with DHS regarding SAVE's updated features that are the subject of this case.[1]

---

[1] *See, e.g.*, Joseph K. Giddens, *Yavapai County Board of Supervisors vote 4-1 to verify voter data with DHS*, Sedona Red Rock News (Mar. 13, 2026), https://www.redrocknews.com/2026/03/13/yavapai-county-board-of-supervisors-vote-4-1-to-verify-voter-data-with-dhs/; Manuelita Beck, *Maricopa County signed agreement with DHS to check voters' citizenship,*

While this case proceeds through the courts, Arizonans are currently voting in a primary election. And Arizona election officials are focused on ensuring that the primary runs smoothly. Federal court orders that change election infrastructure in the middle of election season risk creating confusion for election officials and the public.

Because of the Legislative Leaders' unique insight into the practical reality of the issues presented here, they submit this brief in support of Defendants-Appellants' Emergency Motion for an Immediate Administrative Stay and Stay Pending Appeal to argue that the public interest weighs in favor of maintaining stable election-related processes during election season.

## ARGUMENT

## I. States have an important interest in maintaining public confidence in elections.

Upholding public confidence in election processes is an important state interest. For decades, the Supreme Court has recognized the importance of that interest. In *Purcell v. Gonzalez*, the Court said that

*documents show*, ABC 15 (May 13, 2026, at 8:22 MST), https://www.abc15.com/news/politics/maricopa-county-signed-agreement-with-dhs-to-check-voters-citizenship-documents-show.

"[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." 549 U.S. 1, 4 (2006). And in *Crawford v. Marion County Election Board*, the Court confirmed that while States indeed have an interest in preventing voter fraud, States also have an independent interest in "public confidence in the integrity of the electoral process." 553 U.S. 181, 197 (2008); *see also Burson v. Freeman*, 504 U.S. 191, 199 (1992) (recognizing that "a State has a compelling interest in protecting voters from confusion").

Consistent with States' interest in promoting confidence among the electorate, many state legislatures make election legislation a top priority. Indeed, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). The National Conference of State Legislators (NCSL) reported that, in 2025, state legislators introduced over 3,000 election-administration-related bills.[2] Legislatures around the country, including in Arizona, have assembled legislative committees tasked specifically

---

[2] NCSL Staff, *Can States and the Feds Strike a Balance on Election Roles?*, NCSL (Nov. 11, 2025), https://www.ncsl.org/state-legislatures-news/details/can-states-and-the-feds-strike-a-balance-on-election-roles.

with reviewing election-related bills, listening to expert and public testimony, and revising and refining those bills throughout the legislative process to best meet the needs of their States and citizenries.

State legislatures' commitment to maintaining public confidence in elections is unsurprising. Polls show that safeguarding elections is a top concern amongst voters.[3]

When enacting laws to ensure that voters trust election outcomes, state legislatures expect those laws to be followed. That is a key aspect of federalism. Federalism allows local lawmakers to "be more sensitive to the diverse needs of a heterogenous society"; "it increases opportunity for citizen involvement in democratic processes"; "it allows for more innovation and experimentation in government"; and "it makes government more responsive by putting the States in competition for a mobile

---

[3] *See* Travis N. Taylor, *September 2024 Election Integrity Poll Summary*, Ctr. for Excellence in Polling (Sep. 13, 2024), https://excellenceinpolling.com/poll/september-2024-election-integrity-poll-summary/ ("[A]n overwhelming majority (86%) of voters are concerned with safeguarding American elections."); Pew Rsch. Ctr., *Confidence in voting access and integrity; expectations for whether and when the election results will be clear* (Oct. 24, 2024), https://www.pewresearch.org/politics/2024/10/24/confidence-in-voting-access-and-integrity-expectations-for-whether-and-when-the-election-results-will-be-clear/.

citizenry." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). Federalism also "allows States to respond, through the enactment of positive law, to the initiative of those who seek a voice in shaping the destiny of their own times without having to rely solely upon the political processes that control a remote central power." *Bond v. United States*, 564 U.S. 211, 221–22 (2011). So when a State is prevented from acting on or enforcing duly enacted election-related laws, the State's "legitimate interest in the continued enforceability of its own statutes" is frustrated, *see Maine v. Taylor*, 477 U.S. 131, 137 (1986), as is the State's interest in securing "public confidence in the integrity of the electoral process," *Crawford*, 553 U.S. at 197.

The Supreme Court has recognized States' interest in election integrity. To promote that interest, state legislators across the Nation have introduced and enacted bills. And "respect for the place of the States in our federal system calls" for the Court to weigh States' efforts to make sure their citizens trust election outcomes. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997).

**II. A stay would provide the consistency necessary to maintain public confidence—especially because elections already are already underway.**

The public interest favors maintaining existing election-related processes and systems for States while the appeal proceeds, because elections are already underway. Although "States are free to decide for themselves whether last-minute changes to an election are in their best interests," the Supreme Court has repeatedly made clear that "federal courts should not impose changes close to an election." *Allen v. Milligan*, 146 S. Ct. 1377, 1381 (2026) (per curiam). To respect that principle, this Court should grant Defendants-Appellants' stay motion.

In the district court, Defendants-Appellants emphasized that "[m]any state and local agencies rely on the modified SAVE system to maintain accurate voter-registration lists and to verify eligibility for public benefits." (ECF No. 116-1 at 12.) "Prior to the Court's order, the modified SAVE system processed over one million status-verification requests each day." (*Id.* at 2.) According to a declaration submitted by Defendants, "states such as Iowa, Utah, Ohio, Mississippi, and Wyoming have enacted legislation requiring the use of SAVE for regular maintenance of voter registration lists." (ECF No. 116-2 at 3.)

The use of SAVE for voter verification is widespread among the States. The NCSL recently reported that "[a]t least 10 states statutorily authorize or require voter list comparison with the [SAVE] database … , and an additional 15 states without direct statutory authorization currently use the system."[4] Additionally, many state legislators have considered bills that would increase the States' use of the SAVE system.[5]

The current litigation between Florida, Indiana, Iowa, and Ohio and DHS further demonstrates how States have incorporated SAVE into state laws that will be frustrated without a stay. *See Florida v. U.S. Dep't of Homeland Sec.*, No. 3:24-CV-509, 2026 WL 1968339, at \*4 (N.D. Fla. July 7, 2026) (granting States' motion to enforce settlement agreement against DHS). The court presiding over that litigation concluded Defendants-Appellants' attempt to comply with the district court's order in this case had "harm[ed] … those states" because they could not "utilize the disabled features of the SAVE system." *Id.* at \*2.

---

[4] Katie King, et al., *Election Legislation Trends to Watch in the Coming Months*, NCSL (Mar. 30, 2026), https://www.ncsl.org/state-legislatures-news/details/election-legislation-trends-to-watch-in-the-coming-months.

[5] *Id.*

If States rely on the SAVE system to perform election-related functions, then a stay surely favors the public interest. *See Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020) (stating that the "public interest" was "served by maintaining the ability to enforce the law adopted by the" Minnesota State Legislature "and in upholding the exclusive authority vested in the" state legislature "under the Electors Clause of the United States Constitution"). Halting a widely used system in the middle of election season harms public confidence in elections. News and media coverage of the extended use of the SAVE system for voter-roll maintenance has been extensive across major national platforms.[6] Likewise, local media outlets have reported on States' use of the system and legislative efforts at incorporating it into state law.[7]

---

[6] *See, e.g.*, Jude Joffe-Block & Miles Parks, *33 million voters have been run through a Trump administration citizenship check*, npr (Sept. 11, 2025, at 1:37 ET), https://www.npr.org/2025/09/10/nx-s1-5477367/save-election-citizenship-data-trump.

[7] *See, e.g.*, Cameron Smith, *New Mississippi laws bring teacher raises and voter verification changes*, WJTV (July 1, 2026, at 8:02 CDT), https://www.wjtv.com/news/politics/mississippi-politics/new-mississippi-laws-bring-teacher-raises-and-voter-verification-changes/ (discussing Mississippi's new law using SAVE); Wesley Muller, *Louisiana adopts stricter voter ID rules that suffrage advocates call unneeded*, Louisiana Illuminator (June 10, 2026, at 5:00 MST),

Some States have already finished their primary elections, and the rest have either already started primaries or are on the eve of primaries.[8] Preventing the use of SAVE's new features at this point creates exactly the kind of scenario that should give the Court pause.

Principles similar to those underlying *Purcell* should apply here. There, the Supreme Court said that "[c]ourt orders affecting elections, *especially conflicting orders*, can … result in voter confusion and consequent incentive to remain away from the polls," noting that this risk only increases "[a]s an election draws closer." 549 U.S. at 4–5 (emphasis added). As such, federal courts facing litigation that implicates election procedures should "'consider the importance of preserving the status quo' in the realm of elections to avoid voter confusion"; "consider the fairness of [an] injunction with regard to timing," avoiding "intervening 'in the period close to an election'"; and consider interests of federalism. *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 220 (D.D.C. 2025).

---

https://lailluminator.com/2026/06/10/louisiana-voter-id/ (discussing Louisiana's new law using SAVE).

[8] *See 2026 State Primary Elections*, Vote 411, https://www.vote411.org/primaries2026 (last visited Jul. 9, 2026).

Although the district court did not enjoin an election law, its vacatur of the modified SAVE system profoundly affects election administration. So principles similar to those that motivated *Purcell* should apply as this Court considers Defendants-Appellants' stay motion. While election officials across the country are currently administering elections, any change to election-related processes that States have relied on imposes an extra administrative burden on those local officials and risks voter confusion. *See Tenn. Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024) (recognizing the concerns that underlie *Purcell* as "the risk of voter confusion and the unfairness of unexpected administrative burdens").

*    *    *

"It is one thing for state legislatures to alter their own election rules in the late innings and to bear the responsibility for any unintended consequences," but "[i]t is quite another thing for a federal district court to swoop in and alter carefully considered and democratically enacted state election rules when an election is imminent." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). The district court's

11

order altered an election-related process in the middle of elections around the Nation and thus harms the States' interest in maintaining voters' confidence in the electoral process. As a result, the public interest here favors granting a stay while that order is on appeal.

## CONCLUSION

For the foregoing reasons, Defendants-Appellants' Emergency Motion for an Immediate Administrative Stay and Stay Pending Appeal should be granted.

Dated: July 9, 2026

Respectfully submitted,

/s/ *Vincent M. Wagner*

Vincent M. Wagner
Kate B. Sawyer
FUSION LAW, PLLC
7600 N. 15th Street,
  Suite 150
Phoenix, Arizona 85020
(480) 624-5648
vmw@fusion.law
kbs@fusion.law

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5), because, excluding the parts exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1), according to the word-processing software used to prepare this brief, it contains 2,147 words, which is less than one-half the maximum length allotted by Fed. R. App. P. 27(d)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared using Microsoft Word 365 in a proportionally spaced typeface, 14-point Century Schoolbook.

/s/ *Vincent M. Wagner*

Vincent M. Wagner
*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I certify that, on July 9, 2026, I caused the foregoing document to be electronically with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system, which will serve counsel for all parties.

/s/ *Vincent M. Wagner*
Vincent M. Wagner
*Counsel for Amici Curiae*