**[ORAL ARGUMENT NOT YET SCHEDULED]**
**No. 26-5243**

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

LEAGUE OF WOMEN VOTERS, *et al.*,

*Plaintiffs-Appellees,*

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-03501 (Hon. Sparkle L. Sooknanan)

## BRIEF OF *AMICUS CURIAE* THE HONEST ELECTIONS PROJECT IN SUPPORT OF APPELLANTS AND STAY PENDING APPEAL

Jason B. Torchinsky
Elizabeth Price Foley*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
(202) 737-8808 (phone)
(540) 341-8809 (facsimile)
jtorchinsky@holtzmanvogel.com
*Application for Admission
Forthcoming*

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Circuit Rule 26.1(a), *amicus curiae* the Honest Elections Project states that it has no parent corporation and no publicly-held corporation owns 10 percent or more of its stock.

*/s/ Jason B. Torchinsky*
JASON B. TORCHINSKY

ii

## CERTIFICATE AS TO PARTIES, RULINGS, & RELATED CASES

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1)(A), *amicus* certifies the following:

**A.    Parties and Amici.** Except for present *amicus* and *amici* Iowa, Florida, Indiana and Ohio, Doc. 2182577 (July 9, 2026), and *amici* Arizona Senate President Warren Peterson and Speaker of the Arizona House of Representatives Steve Montenegro, Doc. 2182590 (July 9, 2026), or any other *amici* who have not yet entered an appearance in this case as of the preparation of this brief, all parties, intervenors, and amici appearing before the district court and this Court are listed in Defendants-Appellants' Certificate as to Parties, Rulings and Related Cases, Doc. 2182115 (July 7, 2026).

**B.    Rulings Under Review.** The rulings under review were issued by the Honorable Sparkle L. Sooknanan on July 7, 2026 (Order and Memorandum Opinion Granting Summary Judgment), and July 8, 2026 (Order and Memorandum Opinion Denying Motion to Stay), which appear in the Addendum to Defendants-Appellants Emergency Motion for an Immediate Administrative Stay and Stay Pending Appeal, at Add. 1-77, 91-114.

**C.    Related Cases.** This case has not previously been before this Court, and counsel is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

/s/ *Jason B. Torchinsky*
JASON B. TORCHINSKY

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT................................................ii

CERTIFICATE AS TO PARTIES, RULINGS, & RELATED CASES.... iii

TABLE OF CONTENTS ..................................................................... v

TABLE OF AUTHORITIES..................................................................vii

INTEREST OF AMICUS CURIAE.......................................................... 1

ARGUMENT ...................................................................................... 2

    I.   The District Court's Vacatur is Likely to Be Reversed or
Substantially Modified Because It is Remedially Overbroad ............... 3

       A.  The Vacatur Exceeds Traditional and Statutory Equitable
Limits ....................................................................................... 3

       B.  The District Court Failed To Apply This Court's Remand-
Without-Vacatur Doctrine ............................................................. 12

    II.  The Remaining Stay Factors Favor Relief Because the Vacatur
Creates Conflicting Federal Court Orders And Concrete Sovereign
Harms........................................................................................... 16

CONCLUSION ................................................................................... 24

CERTIFICATE OF COMPLIANCE......................................................... 25

CERTIFICATE OF SERVICE.............................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez,*
585 U.S. 579 (2018) ............................................................................ 19

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
988 F.2d 146 (D.C. Cir. 1993) ......................................... 13, 14, 15, 23

*Alvarez v. Smith*
558 U.S. 87 (2009) .............................................................................. 7

*Camreta v. Greene*
563 U.S. 692 (2011) ............................................................................ 7

*Comcast Corp. v. FCC,*
579 F.3d 1 (D.C. Cir. 2009) .............................................................. 15

*Corner Post, Inc. v. Bd. of Governors,*
603 U.S. 799 (2024) ............................................................................ 3

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006) .......................................................................... 11

*FDA v. Alliance for Hippocratic Medicine,*
602 U.S. 367 (2024) ............................................................................ 3

*Hecht Co. v. Bowles,*
321 U.S. 321 (1944) .......................................................................... 11

*Liu v. SEC,*
591 U.S. 71 (2020) ............................................................................ 11

*Lujan v. Nat'l Wildlife Fed.,*
497 U.S. 871 (1990) ............................................................................ 9

*Madsen v. Women's Health Ctr.,*
512 U.S. 753 (1994) ............................................................................ 4

*Monsanto Co. v. Geertson Seed Farms,*
  561 U.S. 139 (2010) ....................................................................... 11, 12

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan,*
  577 U.S. 136 (2016) .............................................................................. 11

*Nken v. Holder,*
  556 U.S. 418 (2009) ......................................................................... 2, 17

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) ............................................................................ 9, 10

*Shelby County v. Holder,*
  570 U.S. 529 (2013) ............................................................................... 3

*Sugar Cane Growers Cooperative of Fla. v. Veneman,*
  289 F.3d 89 (D.C. Cir. 2002) .............................................................. 13

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ............................................................................... 4

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ......................................................... 4, 5, 9, 22, 23

*U.S. Bancorp Mortgage Co. v. Bonner Mall P'hip*
  513 U.S. 18 (1994) ............................................................................. 6, 7

*United States v. Texas,*
  599 U.S. 670 (2023) .......................................................................... 7, 8

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) ............................................................................. 11

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ................................................................................. 12

**Statutes**

5 U.S.C. § 551 ......................................................................................... 9

5 U.S.C. § 552a .................................................................................... 10

5 U.S.C. § 702. ................................................................................. 6, 9

5 U.S.C. § 703. .................................................................................... 6

5 U.S.C. § 705 .................................................................................... 6

5 U.S.C. § 706 ................................................................. 5, 7, 9, 10, 15

8 U.S.C. § 1373 ............................................................ 2, 14, 18, 20, 23

28 U.S.C. § 2106 ................................................................................ 6

**Other**

90 Fed. Reg. 48948 ........................................................................... 13

90 Fed. Reg. 50879 ........................................................................... 13

Fed. R. App. P. 8 ............................................................................... 6

## INTEREST OF AMICUS CURIAE[1]

*Amicus curiae* the Honest Elections Project ("HEP") is a nonpartisan organization devoted to supporting the right of every lawful voter to participate in honest elections. Through public engagement, advocacy, and public-interest litigation, the Project defends fair and reasonable measures that protect the integrity of elections. The Project supports commonsense voting rules and opposes efforts to reshape elections for partisan gain. HEP thus has a significant interest in this case, which implicates the proper administration of federal and state statutes mandating that only United States citizens are eligible to vote.

Due to the expedited nature of this appeal, filing a unified brief with other *amici* who already submitted briefs in support of Defendants-Appellants was not practicable. Moreover, HEP's *amicus* offers meaningfully different arguments relating to the district court's remedial authority that may assist the Court in its analysis of the pending motion.

---

[1] No counsel for any party authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person, other than *amicus curiae,* its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

No party objects to the filing of this brief. The motion for leave to file accompanies this brief.

## ARGUMENT

This brief addresses the question critical to the pending stay motion: Whether the district court's immediate, system-wide vacatur of the 2025 SAVE modified system should remain in effect while this Court reviews serious remedial and statutory questions. Under *Nken v. Holder*, 556 U.S. 418 (2009), the stay factors favor interim relief. Appellants are likely to succeed on remedy for two reasons. First, the vacatur disregards this Court's remand-without-vacatur doctrine. Second, the vacatur exceeds equitable-tailoring principles; it is disproportionate to the harm the district court tried to address because it completely disables the modified SAVE system based on narrow voter and privacy injuries that could have been addressed with a tailored order. The remaining *Nken* factors also favor relief because the order puts DHS under contradictory federal-court commands, disrupts federal-State verification processes contemplated by 8 U.S.C. § 1373(c), and inflicts concrete sovereign harms on States that relied on SSN-search and bulk-upload functions. HEP therefore urges the Court to stay, or at least narrow, the vacatur during

the pendency of this appeal.

## I. THE DISTRICT COURT'S VACATUR IS LIKELY TO BE REVERSED OR SUBSTANTIALLY MODIFIED BECAUSE IT IS REMEDIALLY OVERBROAD

### A. The Vacatur Exceeds Traditional and Statutory Equitable Limits

The Supreme Court has consistently reaffirmed that Article III courts are not "roving commissions assigned to pass judgment on the validity of the Nation's laws." *Shelby Cnty. v. Holder*, 570 U.S. 529, 581 (2013) (quoting *Broadrick v. Okla.*, 413 U.S. 601, 610–11 (1973)). *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395–96 (2024), reinforced that plaintiffs must show concrete, particularized injuries—not regulatory disagreement—to obtain any remedy, let alone system-wide vacatur. And in *Corner Post, Inc. v. Board of Governors*, 603 U.S. 799, 828–33 (2024) (Barrett, J., concurring), Justice Barrett underscored that the APA's judicial-review provisions are best read against their common-law backdrop, which channels relief toward redressing the parties' injuries.

Even assuming *arguendo* that DHS committed a procedural misstep in the timing or scope of its Systems of Records Notices, the district court's system-wide vacatur of the entire modified SAVE system

3

cannot stand. The remedy exceeds Article III, the APA, and traditional equity, and it ignores this Circuit's remand-without-vacatur framework. That remedial error is enough for a stay: the Court need not resolve every Privacy Act, Social Security Act, or APA merits issue to conclude that immediate nationwide vacatur was not the only permissible interim remedy.

Article III limits judicial power to redressing actual, concrete injuries suffered by the parties before the court. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Remedial authority is bounded in the same way: Relief must be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 766 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

The Supreme Court recently reinforced that principle for nationwide relief against the Executive Branch. In *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), the Court held that universal injunctions "likely exceed[] the equitable authority that Congress has granted to federal courts" and stayed injunctions broader than necessary to provide complete relief to each plaintiff with standing to sue. *Id.* at 837, 851–52.

When a court enjoins the Executive Branch, the Court observed, separation-of-powers concerns arise, and irreparable harm inherently flows from preventing the Executive from "enforcing its policies against nonparties." *Id.* at 859. *CASA* thus confirms that equitable remedies must be tailored to redress the plaintiff's injury, not supervise Executive Branch policy.

*CASA* does not decide whether Section 706 of the Administrative Procedure Act ("APA") authorizes vacatur. *Id.* at 847 n.10. But Section 706's "set aside" relief, 5 U.S.C. § 706(2), is still a judicial remedy. When it operates nationwide, it raises the same separation-of-powers, irreparable harm, and tailoring concerns. Universal vacatur disables a federal policy for nonparties just as surely as a universal injunction forbids enforcement against them, giving one district court effective power to stop an Executive policy for the Nation before other courts can act or appellate review can occur. Courts therefore should not presume that Section 706 silently authorizes the same nationwide, nonparty consequences that *CASA* held likely to exceed traditional equitable authority in the injunction context.

The APA confirms that remedial discretion survives. Section 702

preserves other limits on judicial review and the court's power to "deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702. Section 703 channels APA review through ordinary "form[s] of legal action," and § 705 authorizes interim relief only "to the extent necessary to prevent irreparable injury." *Id.* at §§ 703, 705. Those provisions resist any automatic rule requiring immediate nationwide vacatur without regard to necessity, tailoring, reliance, or disruption.

Ordinary appellate remedial authority reinforces that conclusion. Federal Rule of Appellate Procedure permits a Court of Appeals to stay a district-court order and suspend, modify, restore, or grant injunctive relief while pending appeal. Fed. R. App. P. 8. Likewise, 28 U.S.C. § 2106 authorizes appellate courts to act "as may be just under the circumstances." This Court therefore need not leave an overbroad vacatur in place merely because the district court found agency action unlawful.

The Supreme Court's vacatur cases underscore the same point. In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, the Court treated vacatur after mootness as an "extraordinary" equitable remedy, not a ministerial consequence of a legal ruling. 513 U.S. 18, 25–26 (1994).

6

*Camreta v. Greene* similarly describes vacatur as an "equitable remedy" that prevents an unreviewable decision "from spawning any legal consequences, so that no party is harmed by . . . a 'preliminary' adjudication." 563 U.S. 692, 712–13 (2011) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40–41 (1950)). And Justice Stevens's separate opinion in *Alvarez v. Smith* explains that the party seeking vacatur bears the burden to show an "equitable entitlement to the extraordinary remedy of vacatur." 558 U.S. 87, 99 (2009) (Stevens, J., concurring in part and dissenting in part) (quoting *U.S. Bancorp*, 513 U.S. at 26). These authorities confirm that vacatur must be justified by equitable need and the public interest.

The Supreme Court has already flagged the same concern in the APA context. In *United States v. Texas*, 599 U.S. 670 (2023), the Court resolved the case on standing and did not decide the scope of Section 706. But Justice Gorsuch, joined by Justices Thomas and Barrett, questioned whether Section 706's "set aside" authority enables the power to "vacate" agency action "in the sense of rendering it null and void." *Id.* at 695–99 (Gorsuch, J., concurring in the judgement). They observed that "universal relief, whether by way of injunction or vacatur, strains our separation of

powers" by aggrandizing judicial power and "allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide." *Id.* at 703. "At a minimum," they instructed, courts must "ask[] whether party-specific relief can adequately protect the plaintiff's interests" and if so, "an appellate court should not hesitate to hold that broader relief is an abuse of discretion." *Id.*

Justice Gorsuch's concurrence is not controlling, but it confirms the seriousness of the issue and the need to confront remedial limits before imposing system-wide vacatur. Here, the vacatur imposed suffers from precisely this defect. The court identified four Texas voters whose SAVE queries returned inaccurate or incomplete citizenship indicators, allegedly causing proof-of-citizenship requests. It also identified a privacy injury from disclosure of SSA records to DHS without meaningful prior notice. Yet the remedy bore no proportion to those injuries. Rather than tailoring relief to protect Plaintiffs through voter-specific limits or interim safeguards for the challenged data disclosures, the court vacated the *entire* modified SAVE system nationwide.

This is the functional equivalent of a universal injunction dressed in APA garb. The vacatur does not merely protect the League of Women

Voters' Texas members from citizenship inquiries; it disables SAVE's SSN-search and bulk-upload capabilities for every state and local agency in the country, for every authorized purpose—including Iowa licensing verification, Florida and Ohio voter-roll maintenance, and public-benefits eligibility screening across dozens of States. The remedy thus operates on nonparties and nonparty jurisdictions in precisely the way *CASA* warned against. *See CASA*, 606 U.S. at 858–61.

The APA's text does not compel this result. Section 706 provides that a court "shall . . . hold unlawful and set aside agency action" found unlawful. 5 U.S.C. § 706(2). But that instruction must be read with the rest of the APA, including Section 702's reservation of other legal and equitable limits on relief. 5 U.S.C. § 702. And "agency action" means "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent[.]" 5 U.S.C. § 551(13). Nothing in the APA's text requires vacatur of *all* dimensions of an agency action when only certain applications or features are unlawful; the court may "set aside" the unlawful portion while preserving the remainder. Indeed, the Supreme Court has made clear that Section 706 cannot be used to "seek *wholesale* improvement" of agency program by court decree. *Lujan v. Nat'l Wildlife*

9

*Fed.*, 497 U.S. 871, 891 (1990) (emphasis in original); *accord Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (Section 706 review is limited to "discrete agency action" and "precludes . . . broad programmatic attack[s]" on agency policies).

Here, the district court treated the 2025 modified SAVE system as monolithic rather than separating its component features. The addition of natural-born citizen records, SSN-search, and bulk-upload functionality serve distinct statutory purposes and could have been analyzed separately. That disaggregation is especially important under the Privacy Act. Section 552a(e)(4) addresses system-of-records notices; Section 552a(e)(11) addresses notice and comment for new or intended routine uses; and Section 552a(o) addresses written matching agreements, verification procedures, retention, destruction, security, and redisclosure controls for covered computer-matching programs. 5 U.S.C. § 552a(e)(4), (e)(11), (o). Those provisions point to tailored notice, comment, matching-agreement, and verification remedies, not automatic nullification of every SAVE capability for every authorized user nationwide.

Traditional equity reinforces the same conclusion. Unless Congress

10

unmistakably provides otherwise, statutory remedies administered by courts incorporate traditional equitable principles, including tailoring, necessity, comparative harms, and the public interest. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–92 (2006); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312–13 (1982); *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944). That rule is not limited to injunctions. In *Liu v. SEC*, 591 U.S. 71 (2020), the Court held that equitable relief must stay within historically available equitable categories and may may not become punitive or overbroad. *Id.* at 79–81 (2020). Similarly, *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), refused to treat a monetary claim as equitable relief once it exceeded recognized limits of equitable restitution. *Id.* at 142–46 (2016).

These cases instruct that a statutory remedy does not become limitless because it bears an equitable label or follows a legal violation. The same principle applies where APA vacatur has the practical effect of an injunction. A court still must ask whether less drastic relief would remedy the established harm. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). The district court made no effort to explain

11

why complete nationwide vacatur was necessary to address Plaintiffs' injuries.

Less disruptive alternatives were readily available. The district court could have remanded the SORNs while leaving the system operational with interim safeguards; limited relief to voter-list maintenance in jurisdictions where Plaintiffs alleged harm while preserving other authorized SSN-search and bulk-upload uses; required protections before adverse action based on SAVE results; or severed any problematic feature from the rest of the modified system. The court considered none of these alternatives.

That failure to consider less disruptive relief is itself an abuse of discretion. *See Monsanto*, 561 U.S. at 165–66; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The district court's order has "public consequences" far beyond the parties: It disables a federal verification system serving important sovereign interests nationwide. That is not complete relief for Plaintiffs; it is nationwide administration by remedial decree.

## B. The District Court Failed To Apply This Court's Remand-Without-Vacatur Doctrine

This Circuit has a settled framework for deciding whether to vacate

agency action or remand without vacatur, and the district court ignored it entirely. That framework reflects the same equitable principle as the Supreme Court's vacatur cases: Vacatur is remedial, not automatic. This Court may remand without vacatur when equity demands it, and it weighs the legal defect against the disruption that vacatur would cause. *Sugar Cane Growers Cooperative of Fla. v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002), Under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993), courts consider two factors: (1) "the seriousness of the order's deficiencies" and (2) "the disruptive consequences of an interim change that may itself be changed." *Id.* at 150–51 (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)).

Both factors favor remand without vacatur here—and, at a minimum, a stay pending appeal. First, the deficiency's seriousness is far from clear. The district court principally faulted DHS and SSA for launching the modified SAVE system before publishing their respective SORNs or allowing a meaningful comment period. Add. 058–067, 076–077. But the agencies *did* publish SORNs: The DHS SORN at 90 Fed. Reg. 48948 on October 31, 2025, and the SSA SORN at 90 Fed. Reg. 50879

13

on November 12, 2025. Any deficiency is thus one of timing, not substance, and is curable on remand because the agencies can republish the SORNs with an adequate comment period and reach the same substantive conclusion. Where a procedural deficiency is potentially curable, *Allied-Signal* counsels against vacatur. *See Allied-Signal*, 988 F.2d at 151.

Second, the vacatur's disruptive consequences are extraordinary. It disabled a federal verification system used by state and local agencies nationwide; forced DHS to cease SSN-based searches and bulk-upload processing that States relied on to meet statutory duties; created a direct conflict with the Northern District of Florida's settlement-enforcement order; and disrupted the cooperative federal-state verification regime Congress established in 8 U.S.C. § 1373(c), which requires federal immigration authorities to respond to authorized state and local citizen-status inquiries.

The district court performed no *Allied-Signal* analysis. It did not weigh disruption against the defect, consider curability, or ask whether preserving the system pending further proceedings would harm Plaintiffs less than vacatur harms the federal government and nonparty States.

14

That omission alone shows a serious likelihood of success on remedy and warrants a stay.

This Circuit has repeatedly remanded without vacatur where an agency's procedural error was potentially curable and vacatur would be disruptive. *See, e.g.*, *Comcast Corp. v. FCC*, 579 F.3d 1, 8–9 (D.C. Cir. 2009) (giving agency multiple chances to correct its rule via remand before vacatur). The district court's failure to acknowledge that law is a serious legal error warranting reversal—and certainly a stay pending appellate review.

The stakes for this Circuit's remedial jurisprudence are significant. If a district court may vacate an entire federal system based on a curable timing deficiency without *Allied-Signal* analysis, remand without vacatur becomes meaningless. Every SORN timing error could trigger automatic system-wide vacatur regardless of consequences. After *CASA*, that result has added constitutional significance—not because *CASA* decided Section 706, but because it rejected nationwide relief without a clear basis in law and equity. This Court should grant a stay to preserve review of that important remedial question.

## II. THE REMAINING STAY FACTORS FAVOR RELIEF BECAUSE THE VACATUR CREATES CONFLICTING FEDERAL COURT ORDERS AND CONCRETE SOVEREIGN HARMS

The irreparable-harm and public-interest factors overwhelmingly favor a stay. A stay would hold the district court's remedial ruling in abeyance during appellate review, rather than resolve the statutory dispute on an emergency schedule. The vacatur has put DHS in an impossible position: One federal court vacated the modified SAVE features, while another ordered their reinstatement. Absent a stay, DHS remains subject to contradictory judicial commands.

The chronology underscores the emergency. DHS and SSA launched modified SAVE in May 2025; DHS published a SAVE SORN on October 31, 2025; SSA published a related SORN on November 12, 2025; and the Northern District of Florida approved a settlement requiring SSN-search and bulk-upload functions on December 1, 2025. DHS performed those obligations until disabling the features after vacatur, and the Northern District of Florida ordered reinstatement on July 7, 2026. The vacatur thus disrupted an existing court-approved settlement and ongoing State reliance.

In *State v. U.S. Department of Homeland Security*, the Northern

16

District of Florida incorporated a comprehensive settlement agreement requiring DHS to improve and modernize SAVE by integrating with SSA to allow searches using full SSNs and last-four-digit SSNs, and by processing bulk-upload verification requests so users would not have to manually input requests one-by-one. *Florida v. DHS*, No. 3:24-cv-509 (N.D. Fla. July 7, 2026), Dkt. 45 at 2–3. The court retained enforcement jurisdiction for twenty years. When DHS disabled these features after the district court's vacatur, the settling States moved to enforce. On July 7, 2026, the Northern District of Florida found DHS in violation of the settlement and ordered immediate reinstatement of SSN-search and bulk-upload capabilities. *Id.*

DHS cannot comply with both orders simultaneously. If it reinstates the features, it violates the district court's vacatur. If it keeps them disabled, it violates the Northern District of Florida's enforcement order. This is the paradigmatic case for a stay: Orderly administration of justice requires that conflicting obligations not persist while appellate courts resolve the underlying legal questions. *See Nken*, 556 U.S. at 435 (a stay suspends judicial alteration of the status quo).

The conflict raises profound concerns about judicial comity and

17

orderly administration. This Court need not decide on an emergency motion which district court has the better view of the Social Security Act, the Privacy Act, or § 1373. The narrower point is that the Executive Branch should not remain under irreconcilable judicial commands while appellate review proceeds. A stay would prevent that gridlock without foreclosing merits review or appropriately tailored final relief.

The Northern District of Florida, for its part, expressly considered the district court's vacatur and concluded that the interests of the settling States outweighed whatever concerns animated the court's order. *Florida,* No. 3:24-cv-509, Dkt. 45 at 7–9. It found that Florida, Ohio, Iowa, and Indiana face concrete and irreparable harms from the inability to verify citizenship of registered voters and professional-license applicants—harms that cannot be remedied by monetary damages and that implicate core sovereign functions. The Northern District of Florida's independent assessment of the statutory questions, reaching a diametrically opposite conclusion from the district court, further confirms that the legal issues are far from settled and that the district court should not have imposed a *fait accompli* through immediate vacatur.

Beyond the inter-court conflict, the vacatur inflicts concrete harms on nonparty sovereign States—harms that constitute irreparable injury to the public interest. Florida and Ohio are unable to use modified SAVE to comply with state laws requiring verification of citizenship status of registered voters and voter-registration applicants. These States relied on the SSN-search and bulk-upload features to cross-reference voter rolls against DHS databases, identifying registrants whose citizenship indicators do not confirm U.S. citizenship. Without these features, these States cannot discharge their statutory obligations to maintain accurate voter rolls—obligations imposed by both state law and the National Voter Registration Act. The resulting harm is irreparable because "[t]he inability to enforce [one's] duly enacted plans," including plans to safeguard election integrity, "clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018) (cleaned up).

Iowa cannot comply with a state law requiring citizenship verification of professional-license applicants. Iowa submitted declarations to the Northern District of Florida explaining that it has no alternative means of verifying citizenship for licensing purposes in the absence of the SSN-based SAVE queries the district court vacated.

19

*Florida*, No. 3:24-cv-509, Dkt 34-1.

These sovereign harms extend to every state and local agency that used the modified SAVE features for any purpose authorized by 8 U.S.C. § 1373(c). That statute requires federal immigration authorities to respond to federal, state, and local inquiries seeking to verify or ascertain citizenship or immigration status for any individual within the agency's jurisdiction for any purpose authorized by law. The district court's vacatur did not merely stop voter-list bulk processing in Texas; it disabled the system for all authorized users and all authorized purposes nationwide.

Plaintiffs' asserted injuries, though serious, confirm the need for targeted relief rather than system-wide vacatur. The district court identified four Texas voters who received proof-of-citizenship inquiries after SAVE returned inaccurate or incomplete citizenship indicators, and it found that some registrations were threatened, cancelled, or required corrective action. Add. 034–035. Those harms can be addressed while this appeal proceeds by requiring notice and opportunity to cure, and by prohibiting adverse voter-registration action based solely on a SAVE response. The DHS template Memorandum of Agreement already points

20

that way: When a SAVE user receives any response other than "U.S. citizen," the user must contact the registrant or voter and provide an opportunity to submit proof before taking adverse action. Add. 019.

A stay preserves the operational *status quo* that existed before the district court's vacatur, allows DHS to comply with its settlement obligations and statutory duties, and permits this Court to resolve the serious legal questions presented without the ongoing destabilization of federal-state verification processes. If this Court ultimately affirms the district court's merits conclusions, it can fashion appropriate relief at that time. But the extraordinary step of disabling a nationwide system while the legal questions are being resolved is neither necessary nor appropriate.

The district court's own factual findings underscore the availability of targeted relief. The court found that the DHS template Memorandum of Agreement requires any SAVE user receiving a response other than "U.S. citizen" to contact the registrant or voter for proof of citizenship before adverse action. Add. 019. That safeguard means no voter should be removed based solely on a SAVE response. Plaintiffs' injuries can be mitigated through targeted procedural protections before a citizenship

inquiry is sent or voter-registration action is taken, without disabling the entire system.

The district court's standing analysis also demonstrates the mismatch between injury and remedy. The court relied on four Texas declarants who experienced difficulties after Texas used modified SAVE. Add. 034–035. Yet the vacatur extends to all fifty states, all territories, and all authorized purposes—not merely voter-registration maintenance in Texas. A remedial order that broad, based on injuries that narrow, is hard to reconcile with the Supreme Court's complete-relief rule or this Circuit's remand-without-vacatur cases. *CASA*'s footnote 10 does not change that conclusion, because the issue is not whether APA vacatur is categorically available but whether this system-wide vacatur was tailored to Plaintiffs' injuries and justified by equitable considerations. At minimum, the remedy's overbreadth presents a serious question warranting a stay.

For the same reason, *CASA* strongly supports staying the vacatur. There, the Supreme Court emphasized that universal relief against the Executive Branch can upset the constitutional balance between the branches. "[W]hat matters," the Court explained, is "how the Judiciary

22

may constrain the Executive." *CASA*, 606 U.S. at 859. When a district court issues a nationwide remedy against the Executive Branch, it "improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties." *Id.* (cleaned up). When that happens, "[t]hat is enough to justify interim relief." *Id.*

The district court's vacatur is such a universal remedy. It reaches every user of the SAVE system, in every state, for every purpose, without any limitation to Plaintiffs' actual injuries. This Court should, at minimum, stay that remedy pending appeal to permit full consideration of whether any relief, and if so what scope of relief, is appropriate.

In sum, the district court committed three independent remedial errors warranting a stay or substantial narrowing. It imposed system-wide relief exceeding traditional tailoring limits; failed to conduct the *Allied-Signal* remand-without-vacatur analysis this Circuit requires; and created an irreconcilable conflict with a coordinate court's enforcement order. These errors are distinct from the merits questions under the Privacy Act, the Social Security Act, and § 1373. Even if this Court agrees with the district court's statutory analysis in whole or part,

23

the remedy would still require reversal, narrowing, or remand. That independent likelihood of success on remedy, combined with irreparable harms to DHS, nonparty States, and the public interest, compels a stay.

## CONCLUSION

For the foregoing reasons, *amicus curiae* respectfully urges this Court to grant the motion for a stay pending appeal.

Dated: July 16, 2026

Respectfully submitted,

*/s/ Jason B. Torchinsky*
Jason B. Torchinsky
Elizabeth Price Foley*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
(202) 737-8808 (phone)
(540) 341-8809 (facsimile)
jtorchinsky@holtzmanvogel.com
**Application for Admission
Forthcoming*

*Counsel for Amicus Curiae*

24

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume and word-count limits of Federal Rules of Appellate Procedure and Circuit Rules 29 and 32 and because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 4,290 words.

2.      This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32 because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Jason B. Torchinsky*
JASON B. TORCHINSKY
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system on July 16, 2026, which will serve all parties or their counsel.

*/s/ Jason B. Torchinsky*
JASON B. TORCHINSKY
*Counsel for Amicus Curiae*

26