**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 26-5243**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

LEAGUE OF WOMEN VOTERS, *et al.*,
Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,
Defendants-Appellants.
_____

On Appeal from the United States
District Court for the District of Columbia
_____

**PLAINTIFFS-APPELLEES' OPPOSITION TO APPELLANTS'
EMERGENCY MOTION FOR AN IMMEDIATE
ADMINISTRATIVE STAY AND STAY PENDING APPEAL**
_____

Aman T. George
Ronald A. Fein
Sophie R. Gelber
Johanna M. Hickman
Mark B. Samburg
Robin Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

Jon Sherman
Michelle Kanter Cohen
Emily P. Davis
FAIR ELECTIONS CENTER
1629 K St. NW, Suite 300
Washington, DC 20006
(202) 331-0114

Nikhel S. Sus
John B. Hill
Lauren C. Bingham
Reuven Dashevsky*
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565

*\*Not admitted to the D.C.
Bar; practice supervised by
D.C. Bar Members.*

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION .............................................................................. 1

STATEMENT ................................................................................... 3

I.   The Privacy Act of 1974 ............................................................ 3

II.  The SAVE System ................................................................... 4

III. Defendants Establish Modified SAVE ....................................... 5

IV. Plaintiffs Sue and Defendants Belatedly Publish SORNs for Modified SAVE ........................................................................ 6

V.  Post-Judgment Developments .................................................. 9

ARGUMENT ................................................................................... 10

I.   Defendants Cannot Establish a Substantial Case on the Merits. .................................................................................. 10

    A.   Plaintiffs Have Standing ................................................ 11

    B.   Defendants Lacked Authority for the SAVE Modifications. ................................................................ 16

    C.   The SAVE Modifications Were Arbitrary and Capricious. ................................................................... 18

    D.   The SAVE Modifications Violate the Social Security Act. ............................................................................ 19

    E.   The SAVE Modifications Violate the Privacy Act. .............. 21

II.  Defendants Face No Irreparable Harm. ..................................... 26

III. The Public Interest and Balance of Equities Favor Denying a Stay. ................................................................................... 28

CONCLUSION ................................................................................ 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

CORPORATE DISCLOSURE STATEMENT

# TABLE OF AUTHORITIES

**Cases**

*Alcresta Therapeutics, Inc. v. Azar,*
318 F. Supp. 3d 321 (D.D.C. 2018) .....................................................27

*Am. Fed. of State, Cnty. & Mun. Emps. v. SSA,*
172 F.4th 361 (4th Cir. 2026) ..................................................... 12, 20

*Ames v. DHS,*
861 F.3d 238 (D.C. Cir. 2017) ...........................................................23

*Chaplaincy of Full Gospel Churches v. England,*
454 F.3d 290 (D.C. Cir. 2006) ...........................................................26

*Citizens for Resp. & Ethics in Wash. v. FEC,*
904 F.3d 1014 (D.C. Cir. 2018) .........................................................11

*Colorado Montana Wyoming State Area Conf. of the NAACP*
*v. Smith,*
--- F.4th ---, 2026 WL 1945646 (10th Cir. July 6, 2026) .....................15

*Cuomo v. U.S. Nuclear Regul. Comm'n,*
772 F.2d 972 (D.C. Cir. 1985) ...........................................................28

*Democratic Nat'l Comm. v. Republican Nat'l Comm.,*
141 S. Ct. 28 (2020) ...........................................................................29

*Dep't of Com. v. New York,*
588 U.S. 752 (2019) ...........................................................................13

*Diamond Alt. Energy, LLC v. EPA,*
606 U.S. 100 (2025) ...........................................................................13

*Doe v. Chao,*
540 U.S. 614 (2004) ...........................................................................22

*Doe v. Stephens,*
851 F.2d 1457 (D.C. Cir. 1988) .........................................................22

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S.*
*Dep't of Health & Hum. Servs.,*
396 F.3d 1265 (D.C. Cir. 2005) .........................................................21

*Epic Sys. Corp. v. Lewis,*
584 U.S. 497 (2018) ...........................................................................17

**Cases—continued**

*FAA v. Cooper,*
566 U.S. 284 (2012).................................................................. 11, 22

*FDA v. All. For Hippocratic Med.,*
602 U.S. 367 (2024)......................................................................15

*FEC v. Cruz,*
596 U.S. 289 (2022)......................................................................16

*Florida v. DHS,*
No. 24-cv-00509 (N.D. Fla.) ..........................................................8

*Garcia v. Vilsack,*
563 F.3d 519 (D.C. Cir. 2009) .....................................................22

*League of Women Voters of United States v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) .........................................................15

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
591 U.S. 657 (2020)......................................................................25

*McSurely v. McClellan,*
697 F.2d 309 (D.C. Cir. 1982) .....................................................10

*Purcell v. Gonzalez,*
549 U.S. 1 (2006)..........................................................................29

*Riggs Nat. Corp. & Subsidiaries v. Comm'r,*
295 F.3d 16 (D.C. Cir. 2002) .......................................................24

*United States v. Oakland Cannabis Buyers' Co-op.,*
532 U.S. 483 (2001)......................................................................29

*United States v. Warner,*
25-cv-156, Dkt.56 (S.D.W.V. July 13, 2026) ...............................29

*Wis. Gas Co. v. FERC,*
758 F.2d 669 (D.C. Cir. 1985) .....................................................26

**Statutes**

5 U.S.C.
§ 552a(a)(7)............................................................................3
§ 552a(b)(3)............................................................................3
§ 552a(e)(4)............................................................................3
§ 552a(e)(11).....................................................................3, 18
§ 552a(v)(1)............................................................................4

8 U.S.C.
§ 1373 .............................................................................16, 20
§ 1373(a).............................................................................17

42 U.S.C.
§ 405(c)(2)(C)(viii)(I)......................................................19, 20
§ 405(c)(2)(C)(viii)(IV)........................................................20
§ 1320b-7(d)............................................................................4
§ 1320b-7 note ........................................................................4

Pub. L. No. 99-603, title I
§ 121(a)(1)(C), 100 Stat. 3359 (1986)...................................4
§ 121(c)(1), 100 Stat. 3359 (1986) ........................................4

**Other Authorities**

*Privacy Act Implementation: Guidelines and Responsibilities*,
40 Fed. Reg. 28948 (July 9, 1975) ..................................4, 25

OMB Circular No. A-108, *Federal Agency Responsibilities for
Review, Reporting, and Publication under the Privacy Act*
(2016)......................................................................................4

SSA, Program Operations Manual System, GN 03325.002
*Disclosure and Verification of Social Security Numbers
Without Consent* (2023).........................................................21

# INTRODUCTION

This case concerns two agencies' illegal creation of a centralized federal database containing millions of Americans' private information. The district court entered summary judgment for Plaintiffs after finding that Defendants Department of Homeland Security ("DHS") and Social Security Administration ("SSA") unlawfully transformed the Systematic Alien Verification for Entitlements ("SAVE") system into an unreliable tool for mass citizenship checks. Add.003.[1] The court found that in "scrambling to comply with an Executive Order aimed at reshaping federal elections," Defendants "haphazardly combined and repurposed the private information of millions of Americans, including citizenship data that they knew to be unreliable," and "knowingly trampled on the privacy rights of American citizens in a manner that threatens the sacred right to vote." *Id.* The court thus "vacate[d] the 2025 SAVE modified system and the related notices" as "contrary to law, arbitrary and capricious, in excess of statutory authority, and without observance of procedure required by law." Add.005.

---

[1] "Add." refers to the Addendum to Defendants' motion. "Dkt." refers to district court docket entries.

Defendants now seek to continue operating the illegally modified SAVE system ("Modified SAVE") pending appeal. But they fall far short of their heavy burden to obtain this extraordinary remedy.

Defendants fail to address multiple, independently sufficient grounds for the court's summary judgment order. That alone dooms their likelihood of success on the merits. And the few merits issues they do raise were correctly rejected below as either forfeited or wrong.

Reverting SAVE to its pre-2025 functionality during this appeal will not irreparably harm Defendants. SAVE remains available to verify the citizenship of voters and benefits applicants as it has for decades—the court only vacated SAVE's recent, illegal modifications.

The public interest and equities also weigh heavily against a stay. The unrebutted record shows that Modified SAVE's continued operation threatens millions of Americans' privacy and voting rights. Meanwhile, each "harm" asserted by Defendants is the product of their deliberate strategy to hastily and illegally modify SAVE and then push usage of the inaccurate system for mass citizenship checks—even after the district court expressed doubts about its legality. Any resulting disruptions to

Defendants are self-inflicted and not a proper basis for a stay pending appeal.

Defendants' motion should be denied.

## STATEMENT

### I. The Privacy Act of 1974

The Privacy Act prohibits agencies from disclosing records about individuals without their consent, subject to limited exceptions. One exception is disclosure under a properly noticed "routine use," 5 U.S.C. § 552a(b)(3), defined as a use "for a purpose which is compatible with the purpose for which [a record] was collected," *id.* § 552a(a)(7).

The Privacy Act also imposes strict notice-and-comment requirements. When agencies "establish[] or revis[e]" any "system of records," they must "publish in the Federal Register … a notice," *id.* § 552a(e)(4)—called a System of Records Notice ("SORN")—that discloses the system's contents, functions, uses, and procedures for individuals to access and correct records about themselves. *Id.* Agencies must publish a SORN at least 30 days before "any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments." *Id.* § 552a(e)(11).

Binding Office of Management and Budget ("OMB") guidelines, issued pursuant to a statutory delegation, *see* 5 U.S.C. § 552a(v)(1), confirm that the Act requires a meaningful opportunity for notice and public comment. *See* OMB Circular No. A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act*, at 7 & 12 (2016), https://perma.cc/N9QK-SDLE; OMB, *Privacy Act Implementation: Guidelines and Responsibilities*, 40 Fed. Reg. 28948, 28966 (July 9, 1975), https://perma.cc/776J-4L46.

## II.  The SAVE System

The Immigration Reform and Control Act of 1986 directed DHS's predecessor to establish a "system"—SAVE—to help agencies verify whether "aliens" were eligible for certain government "benefits." *See* Pub. L. No. 99-603, title I, § 121(a)(1)(C), 100 Stat. 3359, 3384-86 (1986), *codified at* 42 U.S.C. § 1320b-7(d); *id.* § 121(c)(1), 100 Stat. at 3391, *codified at* 42 U.S.C. § 1320b-7 note. Today, SAVE is a DHS-administered system "designed to help … government agencies confirm citizenship and immigration status prior to granting benefits and licenses, as well as for other lawful purposes." Add.012. Since 2009, election officials in some

states have used SAVE to verify certain voters' citizenship. *See* Dkt.110-4 at DHS-AR-402.

Before 2025, SAVE was limited in three critical respects. First, SAVE generally did not permit queries of U.S.-born citizens. Add.016. Second, SAVE only accessed records stored in DHS systems and certain immigration-related systems at other agencies; it did not access SSA databases or allow searches using SSNs. *Id.* Third, SAVE only allowed individualized searches; it could not conduct bulk searches of more than one person's data at a time. Add.017.

Also before 2025, DHS recognized SAVE as a system of records under the Privacy Act and issued SORNs for changes to the system. Add.012.

## III. Defendants Establish Modified SAVE

In May 2025, Defendants agreed to "overhaul" SAVE pursuant to an Executive Order directing various agency actions relating to elections. Add.013. Defendants' agreement purported to authorize (1) SSA to share records from its "Master Files of [SSN] Holders and SSN Applications" (including SSNs, names, dates, places of birth, and citizenship indicators) with DHS for SAVE, and (2) bulk SAVE searches using SSNs. *See id.*

DHS launched Modified SAVE later in May. *Id.* But neither agency published SORNs "or otherwise provided an opportunity for the public to comment" before making these modifications. Add.014. The district court found that DHS knew the SAVE modifications were "not in compliance" with the Privacy Act and that inaccurate SSA citizenship data "could cause incomplete or false results." Add.014.

## IV. Plaintiffs Sue and Defendants Belatedly Publish SORNs for Modified SAVE

Plaintiffs are organizations whose members had their private information disclosed without their consent or were wrongfully identified as non-citizens because of Modified SAVE. Add.004-5. Some were purged from voter rolls as a result. Add.035. Plaintiffs filed suit in September 2025 to challenge Modified SAVE as substantively and procedurally unlawful, Dkt.1, and moved for preliminary relief, Dkt.16. While that motion was pending, DHS and SSA belatedly published updated SORNs for Modified SAVE. Add.015. Although the SORNs "solicited comments from the public," they also provided Modified SAVE "would be effective immediately (*i.e.*, before the public could submit comments)." Add.015.

On November 17, the court stated it was "troubled by the recent changes to SAVE" and that it "doubt[ed] the lawfulness of the Government's actions," but denied preliminary relief because Plaintiffs had not yet demonstrated irreparable injury. Dkt.55 at 1.

Summary judgment proceedings followed. After Defendants produced voluminous administrative records and the parties engaged in comprehensive briefing, the court entered summary judgment for Plaintiffs on multiple claims. Add.003.

The court found that Plaintiffs League of Women Voters ("LWV") and League of Women Voters Texas ("LWVTX") had associational standing based on their members' privacy, reputational, voter, and procedural injuries. Add.025-42.[2] On the merits, the court held Modified SAVE and the associated SORNs were "unlawful in several respects": they violated the Social Security Act's prohibition against "disclosure of

---

[2] Because these "injuries suffice[d] to confer standing," the court did not address Plaintiffs' organizational and informational standing. Add.025 n.5.

Social Security numbers and other related SSA records," substantive and procedural protections of the Privacy Act, and the APA. Add.005.[3]

The court rejected Defendants' claims regarding the impact of litigation in the Northern District of Florida between four plaintiff states and DHS (but not SSA). *See Florida v. DHS*, No. 24-cv-00509 (N.D. Fla.) ("*Florida*"). In *Florida*, two months after Plaintiffs sued here, and eleven days after the court below said it "doubt[ed] the lawfulness of the Government's actions," Dkt.55 at 1, the *Florida* plaintiffs and DHS executed a consent decree purporting to *require* DHS to maintain Modified SAVE.[4] The court below rejected Defendants' arguments about the *Florida* consent decree dictating the outcome here, finding it lacked authority to enforce another court's consent decree and, even if it could, "comity does not favor dismissing or abstaining in this circumstance." Add.074.

The court therefore "set[] aside and vacate[d] the 2025 SAVE modified system and the related [SORNs]." Add.005; *see also* Add.074-77.

---

[3] Because relief was "warranted on these [statutory] claims," the court did not address Plaintiffs' constitutional claims. Add.023.

[4] The *Florida* parties filed the proposed consent decree the day after Thanksgiving, and the court entered it the next business day.

## V. Post-Judgment Developments

Defendants appealed and moved for a stay. Dkt.113, 116.[5] The court denied the motion. Add.091-92. It held that Defendants were unlikely to succeed on the merits because they relied on forfeited arguments, Add.094, and "mischaracterize[d] the Court's Privacy Act conclusions," Add.099, despite "DHS itself recogniz[ing] that the modified SAVE was not in compliance with the Privacy Act," Add.094.

The court found any injury to Defendants was "minimal" and not irreparable. Add.103. It added that any injuries related to the *Florida* consent decree were "self-inflicted," Add.105, and that the *Florida* court "had no authority to make merits determinations about the legality of SAVE, either implicitly or explicitly," by entering a consent decree. Add.104-09. Lastly, any harm was outweighed by the public's "substantial" interest in halting "unlawful" agency action and avoiding "mak[ing] a mockery of [the] separation of powers." Add.105-107.

---

[5] The district court permitted the State of Texas, a SAVE user, to intervene as a defendant, and Texas participated in dispositive motion briefing below. Add.020. But Texas is not a party to this appeal.

After the court vacated Modified SAVE, the *Florida* plaintiffs moved to enforce their settlement. On July 7—despite opposition by DHS, and two Plaintiffs as amici, *see Florida* Dkt.42, 37-1—the *Florida* court ordered DHS to "reinstat[e] Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system." *Florida* Dkt.45 at 9.

On July 9, Defendants notified the district court that they were reinstating Modified SAVE's vacated features for the four *Florida* plaintiff states. *See* Dkt.125; Dkt.126-2. In response, Plaintiffs moved to enforce the court's vacatur order. Dkt.128.

Although the *Florida* court's enforcement order "erred in significant ways," Add.107, DHS has not appealed or moved to reconsider or stay the order. Plaintiffs League of Women Voters and EPIC have moved to intervene in *Florida* to appeal that order. *Florida* Dkt.48.

## ARGUMENT

## I. Defendants Cannot Establish a Substantial Case on the Merits.

Defendants fail to meet their "heavy" "burden of demonstrating a substantial case on the merits." *McSurely v. McClellan*, 697 F.2d 309, 317 (D.C. Cir. 1982). And this failure is "'an arguably fatal flaw' for their stay

10

application." Add.094 (quoting *Citizens for Resp. & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018)).

### A. Plaintiffs Have Standing.

The district court correctly found that Plaintiffs have standing on multiple grounds. Add.023-40.

**Privacy and Reputational Injuries.** Defendants misused the personal records of Plaintiffs' members stored in sensitive government systems, unlawfully aggregating their SSA records into Modified SAVE, and disclosing inaccurate information to state officials. Add.029. The court correctly held that these actions caused Plaintiffs' members' cognizable harms.

Defendants mischaracterize these harms as "speculative anxiety," Mot.14, ignoring the cases holding that wrongful disclosure of sensitive or inaccurate information *itself* constitutes concrete harm akin to the torts of intrusion upon seclusion, breach of confidence, and defamation. *See* Add.027-33 (citing cases); *see also FAA v. Cooper*, 566 U.S. 284, 295 (2012) (Privacy Act "serves interests similar to those protected by defamation and privacy torts").

Nor does it matter that these disclosures are "intra-governmental." *Contra* Mot.14. "[A]n unlawful and highly offensive intrusion" into personal privacy can occur when government employees access "sensitive personal information" that they "are not authorized to access." *Am. Fed. of State, Cnty. & Mun. Emps. v. SSA*, 172 F.4th 361, 370 (4th Cir. 2026) (en banc) (cleaned up). The Fourth Circuit is joined in that conclusion by "nearly 'every [district] court in this circuit,'" including the court below. Add.028.

Further, Defendants ignore the district court's conclusion—independently sufficient for standing—that Plaintiffs' members "have been injured by dissemination of inaccurate information falsely indicating that they are non-citizens." Add.032 (cleaned up).

**Voting Injuries.** Modified SAVE has also harmed Plaintiffs' members' voting rights, with its continued operation substantially increasing the risk of forced re-verification of citizenship, deregistration, and even disenfranchisement. *See* Add.033-40. For example, because Modified SAVE provided inaccurate citizenship data to Texas, LWVTX's naturalized and derived citizen members have been forced to provide documentary proof of citizenship to maintain their voter registrations,

with some having their registrations wrongfully cancelled. *See* Add.035.

These burdens on the fundamental right to vote—and the substantial

likelihood of future burdens if Modified SAVE continues—easily confer

standing. *See* Add.033-38 (citing cases).

Defendants do not challenge the sufficiency of these voting injuries.

Instead, they focus on traceability and redressability, reiterating

arguments rejected below about voting burdens being traceable solely to

SAVE users. Mot.10-14.[6] But Defendants misstate the law. As the court

rightly noted, "Article III 'requires no more than *de facto* causality.'"

Add.039 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)).

Thus, plaintiffs have standing "if 'third parties will likely react' to the

government['s] [action] … 'in predictable ways' that will likely cause …

the plaintiff's injury.'" *Id.* (quoting *Diamond Alt. Energy, LLC v. EPA*,

606 U.S. 100, 112 (2025)).

This is precisely such a case. The court explained "the undisputed

record shows that the Plaintiffs' members suffer th[e] injury [of

---

[6] Defendants' claim that the court "papered over" this argument, Mot.13, is erroneous and disingenuous, given their own failure to address the binding precedents on which the court relied. Add.039-40.

additional voter verification] because 'SAVE records show that [they] are not ... United States citizen[s].'" *Id.* "It is hardly surprising that additional voter verification and potential voter disenfranchisement is 'the predictable effect of' the federal government incorrectly informing a state that an individual may be ineligible to vote." *Id.* Indeed, this is the *intended* effect: agreements with DHS *require* SAVE users to "contact the registrant or registered voter to obtain proof of U.S. citizenship" if SAVE cannot confirm citizenship. Add.019; *accord* Mot.7.

Correspondingly, relief here redresses Plaintiffs' harms because it *prospectively* halts the unlawful use of Modified SAVE that has burdened—and would likely continue to burden—Plaintiffs' members' voting rights. *Contra* Mot.13.

Contrary to Defendants' claim that "SAVE is …neither necessary nor sufficient to Plaintiffs' injury," Mot.12, the "undisputed record" shows Plaintiffs' members' voting injuries resulted from inaccurate citizenship data in Modified SAVE. Add.039-40. And Defendants' bare assertion that Plaintiffs cannot be injured by Modified SAVE because it "works better" than old SAVE, Mot.13, is refuted by the court's findings regarding

Modified SAVE's inaccuracies and the resulting harm to Plaintiffs' members, Add.034-35.

**Organizational Injuries.** Plaintiffs LWVTX and LWVLA also have organizational standing based on the "perceptibl[e]" harms Modified SAVE causes to their "core" voter-services mission and "activities." *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 396 (2024).[7] Courts frequently hold that voter services organizations have standing to challenge conduct that impairs their mission-critical functions. *See, e.g.*, *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016); *Colorado Montana Wyoming State Area Conf. of the NAACP v. Smith*, --- F.4th ---, 2026 WL 1945646, at *6 (10th Cir. July 6, 2026) (citing cases). Unrebutted evidence established that Modified SAVE interferes with LWVTX's and LWVLA's core work of ensuring voter access and participation by misidentifying voters as potential non-citizens who must then take additional steps to register or remain registered, and by compelling Plaintiffs to expend greater resources to

---

[7] Defendants' motion does not contest Plaintiffs' organizational standing.

fulfill their mission-critical functions. *See* Dkt.66-1 at 20-22; Dkt.99 at 2-3.[8]

## B. Defendants Lacked Authority for the SAVE Modifications.

Defendants fail to meaningfully address the court's conclusion that they lacked statutory authority for their SAVE modifications. *Compare* Add.001, 071-74 *with* Mot.18 (claiming only that Defendants are "likely to establish that § 1373 authorizes the disclosures at issue").

An "agency ... literally has no power to act ... unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022). The court correctly held that Defendants' actions were not "authorized by" either statute they invoked. Add.067.

As for the Immigration Reform and Control Act of 1986 ("IRCA"), the court explained the statute "has little relevance to this case," because its "provisions govern benefits, not voter eligibility" and concern only "applicants who are 'not a citizen or national of the United States'";

---

[8] The court also correctly found that Plaintiffs have "standing to pursue their procedural claims," Add.040-42, which Defendants do not contest apart from disputing the substantive harms "underl[ying]" Plaintiffs' "procedural injury," Mot.14.

nothing in the statute authorizes bulk disclosure of records on U.S. citizens for mass voter verification checks. Add.069. Nor does IRCA "displace or supersede the relevant provisions of the Social Security Act, the Privacy Act, and the APA." Add.067. Defendants' reading "runs contrary to the 'strong presumption that repeals by implication are disfavored and that Congress will specifically address pre-existing law when it wishes to suspend its normal operations in a later statute.'" *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)).

Similarly, the court held that 8 U.S.C. § 1373—a section of the Illegal Immigration Reform and the Immigrant Responsibility Act of 1996—does not "authorize[] the modified SAVE and permit[] DHS to verify citizenship in any manner that it sees fit—notwithstanding prior statutory limitations on inter-agency data sharing and disclosure of private information." Add.070. The court correctly explained that the "prohibitory language" in 8 U.S.C. § 1373(a) cannot be "read as an 'an affirmative grant of power,'" and "'the overall statutory scheme' … also does not support the Defendants' interpretation." Add.072.

Modified SAVE's lack of statutory authorization dooms Defendants' likelihood of success on the merits.[9]

## C. The SAVE Modifications Were Arbitrary and Capricious.

Defendants' motion also ignores the court's conclusion that modifying SAVE was arbitrary and capricious for three independent reasons. *See* Add.063-67.

First, Defendants' "notice and comment violation [itself] establishes that the government's conduct was arbitrary and capricious." Add.064; *see also* Add.101. Second, Defendants' failure to consider comments meant they "failed to consider 'factors which Congress intended them to consider'" under the Privacy Act, "*i.e.*, the 'written data, views, or arguments' of impacted persons, 5 U.S.C. § 552a(e)(11)", and Defendants "'entirely failed to consider an important aspect of the problem' (*i.e.*, the reliance interests of persons who had provided information to SSA or failed to update SSA data without knowledge of how it would now be used)." Add.064-65. And third, even if Defendants "later considered

---

[9] Although the court did not reach the question, Add.070 n.15, the SAVE modifications also lack the "clear" statutory authorization required by the "major questions doctrine." *See* Dkt.66-1 at 30-32; Dkt.99 at 29-30.

comments in response to the modified SORNs, those comments could not provide a 'reasoned explanation for the change' that [Defendants] undertook" since they "postdate[d] the decision to implement the challenged program." Add.065.

### D. The SAVE Modifications Violate the Social Security Act.

Defendants are unlikely to succeed in appealing the ruling that Modified SAVE violated the Social Security Act's prohibition that "[s]ocial security account numbers and related records that are obtained or maintained ... pursuant to any provision of law enacted on or after October 1, 1990, shall be confidential, and no authorized person shall disclose any such social security account number or related record." 42 U.S.C. § 405(c)(2)(C)(viii)(I).

As the court held in denying a stay, Defendants forfeited their Social Security Act arguments "by raising them for the first time in their stay motion." Add.094-98. Defendants concede their "lack of prior discussion on this point," and that the court concluded "the government had forfeited it." Mot.17. Their only response is to blame *Plaintiffs* for how they framed their Social Security Act arguments. *See id.* But

Plaintiffs' summary judgment briefing squarely presented the claim. Add.095; Dkt.66-1 at 32-33; Dkt.99 at 30-31. In any event, Defendants were not limited to responding to Plaintiffs' arguments, since Defendants *cross-moved* for summary judgment. Dkt.77-1 at 49-50.

Defendants' arguments are also wrong. First, they assert § 405(c)(2)(C)(viii)(I) does not apply because *SSA* "obtains and maintains" the records it discloses through Modified SAVE "pursuant to authorities long predating October 1, 1990." Mot.16. But what matters is *DHS's* statutory authority to "obtain" those records *from SSA*. And Defendants themselves insist that DHS obtains those records pursuant to 8 U.S.C. § 1373, *see* Mot.18; Add.015; Dkt.116-1 at 9, a statute enacted *in 1996*.

Second, Defendants wrongly claim "DHS is not sharing SSNs but instead citizenship status (and whether the individual is deceased)" and is not sharing a "'related record,'" under 42 U.S.C. § 405(c)(2)(C)(viii)(I) and (IV). Mot.16. But "the term 'related record' means any record, list, or compilation that indicates, *directly or indirectly*, the identity of any individual" with an SSN. 42 U.S.C. § 405(c)(2)(C)(viii)(IV) (emphasis

added).[10] The SSA records DHS would obtain through Modified SAVE include a "[f]ull SSN for all matches (when a partial SSN is provided)" and a "true/false" "match" response on certain inputted fields: SSN, name, and date of birth. Add.018. DHS thus "obtains" "related records" because such SSA matches directly and indirectly identify individuals with SSNs. Indeed, SSA policy confirms that *verifying* SSA records through SSN-match-response is equivalent to *disclosing* SSA records. *See* SSA, Program Operations Manual System, GN 03325.002 *Disclosure and Verification of Social Security Numbers Without Consent* (2023), https://perma.cc/PE44-2QBK.

Defendants also recycle their statutory authority arguments, *see* Mot.17, but they fail for the reasons above. *See supra* Argument § I.B.

### E. The SAVE Modifications Violate the Privacy Act.

1. The court correctly concluded the APA provides a remedy for Defendants' Privacy Act violations. Add.047-49; *contra* Mot.18-21.

APA review is available for statutory violations absent "clear and convincing evidence" of legislative intent to preclude it. *El Rio Santa*

---

[10] Defendants omit the "directly or indirectly" part of this definition with an ellipses. Mot.16.

*Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005) (cleaned up). The mere existence of an alternate remedial scheme does not preclude judicial review, particularly one offering "only doubtful and limited relief." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (cleaned up). This Court has held that the Privacy Act's limited remedies do not preclude all APA relief, upholding the availability of declaratory and injunctive relief for Privacy Act violations. *See Doe v. Stephens*, 851 F.2d 1457, 1467 (D.C. Cir. 1988). The Supreme Court has suggested the same. *See Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004); *Cooper*, 566 U.S. at 303 n.12.

Defendants protest that *Stephens* "permitted an APA action to enforce a *different* statute—the Veterans' Records Statute." Mot.19-20. But *Stephens* explicitly considered "the Veterans' Records Statute, as amended by the Privacy Act." 851 F.2d at 1466. And that statute's remedial scheme *is* the Privacy Act. 38 U.S.C. § 5701(j) (disclosures "shall be made in accordance with the provisions of section 552a of title 5"). Thus, *Stephens'* grant of "declaratory relief against" future unauthorized disclosures and "invalidat[ion of] the" agency's "'routine use' regulation" under the APA, 851 F.2d at 1467, controls here.

That *other* statutes preclude APA relief, *see* Mot.20-21 (discussing CSRA and Tucker Act), is irrelevant since this Court has held otherwise for the Privacy Act. Moreover, contemporaneous OMB Privacy Act guidelines confirm that the Act did not preclude APA review, and subsequent amendments show that Congress knew to use explicit language when making the Act's remedies exclusive. *See* Add.051.

2. The court also correctly held Modified SAVE violated the Privacy Act's substantive requirements. Add.052-58.

Defendants are wrong that Modified SAVE's disclosures meet the Act's "routine use" exception since SSA uses SSNs as individual identifiers, and "identification is the only use of the SSN here." Mot.21-23. The routine use exception requires disclosures to be "both (i) 'for a purpose which is compatible with the purpose for which it was collected' and (ii) within the scope of a routine use notice published by the agency." Add.052 (quoting *Ames v. DHS*, 861 F.3d 238, 240 (D.C. Cir. 2017)). This exception does not apply because the purpose of Defendants' *disclosures* is not consistent with the purpose of their *collection*: "SSA collected this information for purposes concerning work authorization and eligibility

for SSA benefits"—not for *DHS's* "maintenance of 'U.S. citizenship records' for voter verification." Add.053.

3. Modified SAVE also violated the Privacy Act's procedural requirements. As explained, agencies must *both* publish a modified SORN 30 days before beginning a new routine use *and* meaningfully consider public comments received thereon. *See supra* Statement § I. Defendants flunked both requirements. Add.058-63.

First, Defendants "failed to publish SORNs at least thirty days before overhauling SAVE." Add.059. They launched Modified SAVE in May 2025, and belatedly published modified SORNs months later in October (DHS) and November (SSA). *Id.* Defendants do not contest this failure.

Second, Defendants' assertion that they "received and considered the comments submitted," Mot.24, is belied by the modified SORNs' statements that the SAVE modifications were "effective immediately," and that the new routine uses took effect as soon as the comment periods closed "regardless" of the comments. Add.015, 059.[11] Defendants

_____

[11] Defendants suggest the presumption of regularity means they could not have violated the Privacy Act. But "clear" and "specific" evidence in

24

"offer[ed] no opportunity for benefits applicants and concerned persons to offer comments prior to the sharing of their data." App.060.

Defendants dispute that neither agency "adequately explained their response to the comments nor engaged in an 'open-minded' process," arguing that agencies need not "detail [their] consideration of, or response to, comments on a SORN." Mot.25. But OMB's Privacy Act guidelines confirm that agencies must review and *consider* comments, as well as explain "any changes made or not made as a result of the public comment." 40 Fed. Reg. at 28966.

Finally, relying on *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 685 (2020), Defendants fault the court for applying the "open-mindedness test" to their notice-and-comment process. Mot.25. Yet they ignore the court's exhaustive discussion of why *Little Sisters* "has little relevance here." Add.060-62. And the court made clear its Privacy Act holding would be the same even if "Defendants are correct and [that] *Little Sisters* abrogated the D.C. Circuit's use of the open-mindedness test[.]" Add.062.

---

the Administrative Record defeats any presumption here. *Riggs Nat. Corp. & Subsidiaries v. Comm'r*, 295 F.3d 16, 21 (D.C. Cir. 2002).

## II. Defendants Face No Irreparable Harm.

As the district court correctly held, *see* Add.102-112, Defendants have failed to show irreparable harm that is "both certain and great," *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), and "of such *imminence* that there is a clear and present need for equitable relief," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

First, Defendants argue the government "need[s] to verify citizenship and immigration status for a host of statutorily mandated purposes." Mot.26. But they concede that such verification can be accomplished with the old SAVE, even if it is "slower" and "more cumbersome." Mot.26. Nor do Defendants rebut that they "face little harm to their ability to verify the accuracy of information if the verification system that they seek to use has known inaccuracies," as does the "SSA data in the modified SAVE." Add.103. Nor do Defendants dispute that, before 2025, DHS had "long conducted similar verifications without using SSA data." *Id*.

Second, Defendants note that multiple states have laws mandating periodic use of SAVE. Mot.26. But "injuries to third parties are not a basis to find irreparable harm" to the stay *applicant.* Add.103 & n.7 (quoting *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018)) (citation modified).[12]

Third, Defendants argue that "the order has forced DHS to maintain, at substantial cost, both the legacy SAVE and the upgraded system in parallel." Mot.27. But Defendants cited "only a declaration stating that the parallel system of records is being maintained to 'prevent[] costly code divergence'—not that maintaining both systems is costly." Add.102 n.6. Nor does anything in the district court's order *require* "maintenance of a parallel systems of records." *Id.*

---

[12] Even if they were relevant, the claimed injuries to third parties lack factual support. Four Proposed Amici states claim they are harmed by the inability to use SAVE for voter list maintenance during "a live election cycle." Br. of Amici Curiae Iowa, Florida, Indiana and Ohio, at 8. But "many states have already conducted voter roll maintenance through [Modified] SAVE," and such activities "in the ninety days prior to a federal … election would be unlawful" in any event under the National Voter Registration Act. Add.103-04. Moreover, none of these four states have shown that their pre-2025 list maintenance processes were ineffective or that voting by non-citizens was widespread before Modified SAVE. All available evidence points to the contrary. *See* Dkt.119 at 20 & n.7.

27

At bottom, Defendants' claimed harm is entirely "self-inflicted." Add.105. Defendants chose to "haphazardly combine and repurpose" millions of Americans' private data in violation of multiple laws. Add.003. Then, after being warned that the court "doubt[ed] the lawfulness of the Government's actions," Dkt.55 at 1, they doubled down, expanding use of Modified SAVE and entrenching it in the *Florida* consent decree. "Such self-imposed costs are not properly the subject of inquiry on a motion for stay." *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 977 (D.C. Cir. 1985).

## III. The Public Interest and Balance of Equities Favor Denying a Stay.

Not allowing Modified SAVE to operate is in the public interest, since it will protect millions of Americans' voting, privacy, and procedural rights. As the court found below and Defendants do not contest, Modified SAVE is riddled with inaccuracies. *See* Add.071; Add.103. And Defendants' desires to expand the use of Modified SAVE risks broadening the harms that erroneously flagged voters have already experienced. *See* Add.034-37. The risk of Modified SAVE burdening fundamental voting

and privacy rights, and causing erroneous denials of critical benefits, weighs strongly against a stay.

Further, the privacy interests Defendants dismiss as insufficiently "concrete," Mot.27, are precisely the same interests that Congress *already weighed* in passing the Privacy Act and Social Security Act, "recognizing that the statutory protections might lead to decreased government efficiency." Add.103. Courts should not "reject the balance that Congress has struck" among competing policy concerns. *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001).[13]

## CONCLUSION

The Court should deny Defendants' stay motion.

---

[13] Proposed Amici wrongly argue that *Purcell v. Gonzalez*, 549 U.S. 1 (2006), counsels in favor of a stay. *See* Br. of Ariz. Sen. Pres. and Speaker of the Ariz. House of Reps. at 3-4. But *Purcell* has no application in an APA suit against federal agencies; it only governs challenges seeking changes in *state election laws. See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring). In any event, the old SAVE *remains available* for voting-related uses, including in Arizona. *See* Dkt.119 at 24 n.15.

Further, Arizona's embrace of Modified SAVE is not universal. At least a dozen states have successfully resisted unlawful government efforts to *force* disclosure of their voter rolls to DOJ to run through Modified SAVE. *See United States v. Warner*, 25-cv-156, Dkt.56 at 1 n.1 (S.D.W.V. July 13, 2026) (collecting cases).

July 16, 2026

Respectfully submitted,

/s/ *Nikhel S. Sus*

Aman T. George
Ronald A. Fein
Sophie R. Gelber
Johanna M. Hickman
Mark B. Samburg
Robin Thurston
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

Nikhel S. Sus
John B. Hill
Lauren C. Bingham
Reuven Dashevsky*
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565

Jon Sherman
Michelle Kanter Cohen
Emily P. Davis
FAIR ELECTIONS CENTER
1629 K St. NW, Suite 300
Washington, DC 20006
(202) 331-0114

*Not admitted to the D.C.
Bar; practice supervised by
D.C. Bar Members.*

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this Opposition complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,198 words. It also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it was prepared using word-processing software in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ *Nikhel S. Sus*
Nikhel S. Sus

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2026, I electronically filed the foregoing Opposition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users.

/s/ *Nikhel S. Sus*
Nikhel S. Sus

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1, and D.C. Circuit Rules 26.1 and 8(a)(4), I certify that Plaintiffs-Appellees League of Women Voters, League of Women Voters of Virginia, League of Women Voters of Louisiana, League of Women Voters of Louisiana Education Fund, League of Women Voters of Texas, and Electronic Privacy Information Center are non-profit corporations with no parent entity and that no entity has a greater than 10 percent ownership interest in them.

/s/ *Nikhel S. Sus*
Nikhel S. Sus